[Civ. No. 33914. Second Dist., Div. Three. Feb. 18, 1970.]

ROBERT LOVE BECKNER, Plaintiff and Respondent, v.
SEARS, ROEBUCK AND COMPANY et al., Defendants and Appellants.

## COUNSEL

Jones, McCue, Camp & Hall, Gerald H. Genard and Niles P. Koines for Defendants and Appellants.

Bolton & Moore, John C. Moore, William G. Bolton and Richard T. Kayalan for Plaintiff and Respondent.

## OPINION

**SHINN, J.**\*—Robert Love Beckner sued Sears, Roebuck and Company, a corporation, (Sears) and certain of its employees accusing them of wrongfully interfering with plaintiff's contract of employment and causing him to be discharged. In a jury trial plaintiff was awarded damages of $20,000 against Sears and William Thompson, an employee. These defendants made a motion for a new trial, which was denied, and they appeal from the judgment. Wyatt Emmett Fitzgerald and James Basil Coo, named as defendants, were awarded judgment of nonsuit; plaintiff does not appeal from this judgment.

It was alleged in the complaint that plaintiff was and for about four years had been employed by Thompson Ramo Woolridge Corporation (TRW) as a security officer, under an employment indefinite as to time and that his salary was $190 net, per week. Fitzgerald and Coo, acting for Sears within the scope of their agency, on April 4, 1967, with several Does, arrested plaintiff at a Sears store in Inglewood for shoplifting (petty theft, § 484, Pen. Code); the defendants learned that plaintiff was employed as aforesaid as a security officer; Fitzgerald and Coo contacted plaintiff's supervisor, Robert Ritzman and stated to him that plaintiff was a thief, was guilty of violation of section 484 of the Penal Code and should not be allowed to work as a security officer for TRW or to handle classified material because of the potential danger to the security of the country; said defendants knew the statements were false and inaccurate and that the same were made with the intent to wrongfully interfere with plaintiff's employment, to induce TRW to breach the employment contract of plaintiff and to discharge him; as a proximate result of said statements TRW discharged plaintiff on April 4, 1967, to plaintiff's damage in the sum of $2,090; defendants acted maliciously, recklessly and carelessly and with wanton disregard of plaintiff's rights. The prayer of the complaint was for $2,090 as compensatory damages for loss of wages and exemplary damages of $100,000. Sears, Fitzgerald and Coo answered with denials, although it was admitted that Fitzgerald and Coo were employees of Sears, acting within the scope and

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

course of their employment. It was stipulated that the answer filed for the others would be deemed to be filed for William Thompson, who was served as John Doe.

Defendants made a motion for judgment of nonsuit which was denied as to Sears and Thompson; the ruling is assigned as error. In the oral argument the appellants urged that the judgment be reversed for this error or that it be reversed on the merits with instructions to enter judgment for appellants. We believe the appeal will be disposed of more fairly and satisfactorily by a consideration of the entire proceeding in the trial than by a weighing of tenuous inferences derivable from the fragmentary development of the facts by plaintiff.

 We have concluded that the judgment should be reversed for error in the rulings of the court and for the further reason that it was established by uncontroverted evidence and inescapable inferences that appellants were not guilty of conduct which was a proximate cause of plaintiff's discharge from his employment.

 It is the settled rule in actions for wrongful interference with contract rights that an essential element of the cause of action is that the conduct charged be the procuring cause of the interference and the harm. (*Augustine* v. *Trucco,* 124 Cal.App.2d 229, 246 [268 P.2d 780]; *Hill* v. *Progress Co.,* 79 Cal.App.2d 771, 780 [180 P.2d 956].)

Certain material facts were established by uncontradicted evidence; Fitzgerald and Coo were security officers for Sears; Thompson was their supervisor; plaintiff was arrested by Fitzgerald and Coo at a Sears store and taken to a room where he was interrogated by Fitzgerald, Coo and Thompson; he was accused of petty theft in that he took numerous articles from the store without paying for them; it was disclosed that plaintiff was in the employ of TRW as a security officer and that he had top level clearance as such officer; it was decided by Sears' agents that plaintiff should be prosecuted; the Inglewood police were called in, were informed as to the circumstances of plaintiff's arrest, plaintiff was taken into custody by the police and removed to the police station. Robert Ritzman was a security manager for TRW and appellant's supervisor; Robert Merbach was director of security, health and safety and the supervisor of Ritzman. Ritzman and Merbach were informed by Thompson that plaintiff had been arrested and charged with petty theft; a complaint was filed, plaintiff was tried upon the charge in a nonjury trial and was acquitted.

Plaintiff called Fitzgerald under section 776 of the Evidence Code. He testified that he and Coo placed plaintiff under arrest for petty theft; they learned of his employment and that he held top security clearance; the police

508

were called; after they left Mr. Thompson made a telephone call. Upon cross-examination Fitzgerald testified that he saw plaintiff take a plastic tube which was a container for saber saw blades, a drill bit stand (which plaintiff paid for), some router bits, some chemical tablets from the plumbing section, all of which he secreted in a bag or on his person. Plaintiff then left the store without paying for the articles; plaintiff was arrested in the parking lot; in the office plaintiff produced the above mentioned articles and also a rain hat which he placed upon the desk, saying "Here, I took this, too."

Plaintiff testified he was arrested by Coo and Fitzgerald and taken to an office in Sears' store; he displayed cards showing top security clearance and his employment by TRW; his pockets were emptied but when asked on cross-examination what was removed from them an objection by his attorney was sustained; he was berated by Coo and Fitzgerald, was called a thief, a threat to the security of the country, and they threatened to cause his discharge by TRW; Thompson came in later; the situation was explained to him; it was decided that plaintiff should be prosecuted; Thompson told the police he would call plaintiff's employer and see to it that Beckner was no longer employed by TRW Systems.

Outside the presence of the jury plaintiff made a motion to strike out all the testimony of Fitzgerald pertaining to the taking of the articles mentioned; the motion was granted; the jury was informed that the testimony of Fitzgerald relative to plaintiff's activity in the store and his taking the articles described had been stricken and should be disregarded by the jury.

Plaintiff also produced the file of the municipal court in his case, and over objections by defendants the same was introduced in evidence and given to the jury as evidence in the case. It was shown by the docket that plaintiff had been acquitted of petty theft.

In making the foregoing rulings the court relied upon *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], for the proposition that the acquittal of plaintiff was res judicata as to his innocence of petty theft and foreclosed the defendants from introducing evidence that he had taken the articles from the store.

The present action was instituted and prosecuted under a complete misconception of the holding of the Supreme Court in that case. The facts were that Teitelbaum was suing the insurance company in the name of Teitelbaum Furs, Inc., his *alter ego,* for a loss sustained in an alleged burglary. Evidence was received that Teitelbaum had been convicted of conspiracy to commit grand theft, attempted grand theft and the filing of a false and

fraudulent insurance claim. In the civil action the jury returned a verdict in favor of the plaintiff, the trial court granted a new trial and the plaintiff appealed; the order was reversed, and the trial court was directed to enter judgment for the defendant. The court held that the plaintiff was precluded under the doctrine of collateral estoppel from re-litigating in the civil case the issue of the alleged theft of the furs that had been conclusively determined against it by the conviction of Teitelbaum of conspiracy to defraud the insurance company by assertion of a false and fraudulent claim that the identical furs had been stolen.

The argument of plaintiff that a judgment of acquittal should have the same effect and consequences in later civil litigation as a judgment of conviction is not only without support in the decision in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* but it ignores all the reasoning of the court for its decision.

With regard to the admissibility of evidence of a judgment of guilt as a conclusive determination of that issue the court said (p. 606): "To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt (Code Civ. Proc., § 2061) and of a unanimous verdict (Pen. Code, § 1164), the right to counsel (*In re James,* 38 Cal.2d 302 [240 P.2d 596]), and a record paid for by the state on appeal (Cal. Rules of Court, rule 33). Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards."

A judgment of acquittal does not establish that the acts constituting the offense charged were not committed by the defendant; it means only that they were not proved beyond a reasonable doubt; the distinction was pointed out in *Teitelbaum* by the statement (p. 605): "*In re Anderson, supra,* rejected the plea as applied to a former acquittal on the ground that 'the difference in degree in the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. The acquittal was merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.' (107 Cal.App.2d 670, 672; see *Helvering* v. *Mitchell,* 303 U.S. 391, 397 [58 S.Ct. 630, 82 L.Ed. 917]; Annot. 18 A.L.R.2d 1287, 1315.)"

There are many conditions to a judgment of acquittal which preclude its being regarded as a determination of the question of guilt on the merits. The evidence may be such as to create a reasonable doubt of guilt when the same evidence would amount to a preponderance of the evidence upon

that issue. In cases without number, defendants, who were clearly guilty of the offenses charged, have been acquitted when their confessions were excluded for insufficiency of a legal foundation for their admission. There have been an even greater number of acquittals in which positive evidence of the guilt of the defendants was excluded because it had been obtained illegally, and the defendants were acquitted because of the insufficiency of the admissible evidence produced by the People.

*In re Anderson*, 107 Cal.App.2d 670 [237 P.2d 720], establishes beyond question the soundness of the principle that an acquittal in a criminal prosecution is not a bar to proof in a civil proceeding that the defendant had in fact committed the acts charged as crimes. The case was noticed by the court in *Teitelbaum* to emphasize that applicability of the rule of collateral estoppel turns upon the identity of the·issue determined by the judgment in the criminal case and the issue sought to be proved in the civil case.

It was error to strike out the testimony of Fitzgerald that plaintiff committed petty theft and to admit into evidence the municipal court file which showed plaintiff had been acquitted.

The court made other rulings during the course of the trial the effect of which was to exclude any evidence that plaintiff had stolen articles from Sears' store. In the cross-examination of plaintiff he was asked whether it was true that he had no recollection of having taken things from the store; he was asked whether he had removed from his person any articles for which he had no sales slips; objections of plaintiff were sustained upon the ground that defendants were precluded under the doctrine of collateral estoppel from questioning plaintiff's innocence of petty theft and the defendants' attorney was ordered to desist from similar questioning under a threat that the court would order a mistrial.

As a result of the court's ruling plaintiff was enabled to present to the jury a completely fictitious case. He was made to appear as an innocent man who was discharged from his employment as a result of false representations to his employer that he had been guilty of criminal conduct; and the defendants were pictured as the perpetrators of this wrong. Upon the facts as thus misrepresented the jury properly returned a verdict for substantial exemplary damages as for conduct constituting oppression, fraud or malice. (Civ. Code, § 3294.) The judgment entered upon the verdict must be reversed.

Plaintiff testified that when he reported for work the morning after his arrest he was interviewed by Ritzman. When he was questioned whether the circumstances of his arrest were discussed with Ritzman the court instructed him to answer "Yes" or "No" and he answered "Yes." He had

previously been asked by his attorney the same question and had given the same answer after a warning by the attorney not to tell what was said. He testified that at the end of the interview he was told by Ritzman to go home. Ritzman was not a witness; he was outside the state at the time of the trial.

William Thompson, called by the defense, testified that he talked with the security manager of TRW; he had called only to verify plaintiff's statement of his connection with TRW; he stated to them that plaintiff was under arrest for petty theft for taking articles from the Sears store but he told them of plaintiff's arrest only when asked the reason for his call; they were skeptical; he did not say that plaintiff was a thief or guilty of any offense.

Merbach was called by the defendants; he testified to the communication between Thompson, Ritzman and himself; Thompson described plaintiff and wished to learn whether he was employed by TRW; he told of plaintiff's arrest but he did not say plaintiff was a "thief"; plaintiff could not have been suspended without his (Merbach's) consent; Ritzman reported to him the result of his interview; he (Merbach) agreed to the suspension of plaintiff until the matter could be investigated; he agreed to the suspension solely upon the basis of what Ritzman told him of his interview of plaintiff; the suspension was not ordered on the strength of what Thompson had reported; he told Thompson the matter would be investigated, and an investigator was sent the following day to talk with Thompson. ■ Merbach was asked by defendants' attorney to state what Ritzman had told him of his interview of plaintiff; an objection by plaintiff was sustained on the ground of hearsay. The ruling was erroneous. The result of it was to preclude defendants from proving what Ritzman said which persuaded Merbach to consent to plaintiff's suspension. Plaintiff was able to suppress evidence of what Ritzman and Merbach learned from plaintiff which they regarded as grounds for his suspension.

Plaintiff did not deny having stolen articles from the Sears store either at the time of his arrest or in the trial of the civil action. Throughout the trial he evaded answering questions as to his guilt, which is not surprising in view of the fact that he did not deny the removal of the contents of his pockets in the presence of Coo and Fitzgerald or testify that any articles taken from his pockets had been paid for.

It was a demonstrated fact that plaintiff was not suspended from his employment as a result of the information conveyed to Ritzman and Merbach by Thompson. That telephone call was merely the occasion for an investigation by the security officers of TRW to verify Thompson's statement that appellant was under arrest for petty theft. As a matter of fact Ritzman and Merbach expressed to Thompson their incredulity as to plaintiff's reported actions. One or the other of them said he did not believe it, that

it was impossible. He did not believe it was the same man. "It just wouldn't be, because he knows him personally, and he is a personal friend of his," and Thompson said "I don't know; but that's the reason why I am calling."

The attorney for plaintiff by his objection and the court by its ruling fashioned a remarkably false case for the jury. The pivotal fact that was concealed was that plaintiff did not deny to Ritzman that he had taken articles without paying for them or perhaps admitted the taking and offered some excuse that was unacceptable to Ritzman and Merbach. But the fact which was not concealed but was proved by uncontradicted evidence was that plaintiff was not dismissed because of what Thompson had reported but only after plaintiff was unable to deny to Ritzman the truth of what Thompson had reported. Even if Thompson had not reported the facts to TRW it is scarcely possible that plaintiff would have been able to conceal from his superiors knowledge of his arrest and trial.

Plaintiff failed to prove a case of wrongful interference with his contract rights. The jury found the appellants guilty of oppression and malice as a basis for the award of exemplary damages but only after the defendants had been deprived of their legitimate defenses to the charge.

There are further assignments of error that do not require particular attention. It is contended there was no evidence that Thompson in reporting to TRW had an intention to bring about plaintiff's discharge. There was no evidence that Thompson disclosed the fact of plaintiff's arrest until he was asked the reason for his call. There was evidence that Thompson discussed with plaintiff their respective careers; they had had similar experiences as criminal investigators for the armed services but were unacquainted with each other. Certainly Thompson expressed or exhibited no feeling of hostility toward a former comrade. As to the implied findings of the jury that Thompson acted with malice we need say only that it was based upon a completely false state of facts and is worthy of no consideration.

It is obvious there is no need to consider claims of error in the instructions.

The judgment is reversed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied March 12, 1970, and respondent's petition for a hearing by the Supreme Court was denied April 15, 1970.