[Civ. No. 50302. Second Dist., Div. Two. Mar. 3, 1978.]

WILLIAM G. WILSON et al., Plaintiffs,
Cross-defendants and Appellants, v.
LEATRICE JOY WILSON et al., Defendants,
 Cross-complainants and Respondents.

228

**COUNSEL**

Sid Mannheim for Plaintiffs, Cross-defendants and Appellants.

Booth, Mitchel, Strange & Smith, Owen W. Strange, Charles Collett, Carroll, Burdick & McDonough, J. D. Burdick and Bertrand Le Blanc II as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Appellants.

Frederick J. Kling for Defendants, Cross-complainants and Respondents.

**OPINION**

**BEACH, J.**—This appeal is from a summary judgment denying appellants the right to insurance proceeds payable on the death of their father.

FACTS:

Appellants, the children of Lloyd Wilson by a former marriage, claim the insurance proceeds from policies issued to Lloyd Wilson. Respondent, Leatrice Wilson, was the wife of Lloyd Wilson at the time of his death; she and decedent were in the process of dissolving their marriage. Lloyd died after being shot by respondent. Respondent was tried for murder and acquitted by the jury.

Appellants filed a complaint against respondent and three insurance companies. The first cause of action was to quiet title to the proceeds from three insurance policies and to the former joint interest in 45,000 shares of stock. Appellants also alleged the right to one-half of the real property and one-half of the community property held by decedent before his death. The second cause of action was for declaratory relief as to the rights of all parties.

Respondent demurred to the complaint and that demurrer was sustained without leave to amend on the grounds in respondent's moving papers.[1] An order of dismissal was filed March 29, 1976.

The insurance companies filed cross-complaints in interpleader against respondent and appellants. Appellants answered the cross-complaints by the insurance companies. Respondent filed a cross-complaint against the insurance companies. Appellants answered the cross-complaint by respondent against the insurance companies. In that answer appellants alleged the same facts they had stated in the original complaint.

The trial court granted respondent a summary judgment. (Code Civ. Proc., § 437c.) Other procedural details not important to this opinion are omitted.

CONTENTIONS ON APPEAL:

Appellants contend that the summary judgment was improperly granted because there are factual issues still to be resolved and because the legal issues favor appellants. Appellants argue that Probate Code

---

[1]Respondent's papers contended that the complaint did not state facts sufficient to constitute a cause of action against the defendant, that the court had no jurisdiction over the subject matter of the action, and that appellants were barred from bringing the action by Probate Code section 258.

section 258 does not apply to this case but that in a civil action Civil Code sections 3517[2] and 2224[3] should apply concerning certain nonprobate properties. Should the court find that section 258 applies in this case, appellants argue that the presumption of that section is not controlling.

Respondent contends that the appeal is not timely in that the controversy between the parties was already settled by the sustaining of the demurrer to appellants' complaint and the dismissing of the complaint as to respondent. Alternatively, respondent contends that Probate Code section 258 controls this case.

## DISCUSSION:

### 1. *Timeliness of the appeal.*

The trial court sustained respondent's demurrer without leave to amend and dismissed the case as to respondent. The grounds urged by respondent were lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted because of Probate Code section 258. An order of dismissal was entered and was not appealed by appellants.

■ Respondent contends that the sustaining of the demurrer was as to the merits of the case and operates as res judicata as to the rights of the parties. (*Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47 [92 P.2d 804]; see *See* v. *Joughin,* 18 Cal.2d 603 [116 P.2d 777]; *Erganian* v. *Brightman,* 13 Cal.App.2d 696 [57 P.2d 971]; cf. *Berman* v. *Aetna Cas. & Surety Co.,* 40 Cal.App.3d 908 [115 Cal.Rptr. 566]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 175, p. 3317.) Appellants urge that because of the one-judgment rule they could not appeal the original order of dismissal at the time it was issued since there were still cross-complaints pending concerning the parties.

Normally a dismissal following the sustaining of a demurrer is a final judgment that is appealable. However, when cross-complaints are still pending between the parties, the one-judgment rule may apply. (*Sjoberg*

[2]Civil Code section 3517 provides: "No one can take advantage of his own wrong."

[3]Civil Code section 2224 provides: "One who gains a thing by fraud, accident, mistake undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

v. *Hastorf,* 33 Cal.2d 116 [199 P.2d 668]; *Nicholson* v. *Henderson,* 25 Cal.2d 375, 381 [153 P.2d 945]; *Tsarnas* v. *Bailey,* 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629]; cf. *Cope* v. *Cope,* 230 Cal.App.2d 218, 230 [40 Cal.Rptr. 917]; *Verdier* v. *Verdier,* 203 Cal.App.2d 724, 730-731 [22 Cal.Rptr. 93]; *Crocker-Anglo Nat. Bank* v. *Kuchman,* 194 Cal.App.2d 589, 591 [15 Cal.Rptr. 230].)

This case is squarely governed by the one-judgment rule. Appellants correctly appeal at this stage from the summary judgment.

2. *Use of summary judgment.*

Code of Civil Procedure section 437c provides that respondent here is entitled to summary judgment ". . . if all the papers submitted show that there is *no triable issue as to any material fact* and that the [respondent] is entitled to a judgment as a matter of law." There is no real dispute as to the meaning and operation of this rule. The issue at bench is simple: appellants in their complaint say in effect: "Respondent's act was unlawful. She wrongfully and intentionally killed decedent. We have facts to prove it." Respondent in effect replies: "As a matter of law that question is foreclosed. My act is conclusively presumed lawful under Probate Code section 258. Being conclusively presumed lawful there is no question of fact left to be tried."

█ The court must examine the supporting affidavits of the moving party to see if they contain facts sufficient to establish every element necessary to sustain a judgment in her favor. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, at p. 851, fn. 6 [94 Cal.Rptr. 785, 484 P.2d 953].) The affidavits submitted by the moving party in this case, the respondent, state that respondent is the sole beneficiary for the insurance proceeds on the life of decedent. Attached to the declarations are copies of the insurance policies and insurance certificates. In the moving papers there is reference to the criminal case on which respondent was acquitted of murder. The summary judgment is therefore proper unless appellants presented a triable issue of fact in their papers or if the acquittal of murder is not conclusive regarding lawfulness and causation of death.

Appellants contended in their motion in opposition to the motion for summary judgment that there is a triable issue of fact concerning respondent's civil liability for the killing of decedent.[4]

---

[4]Appellants made several other arguments which have not been argued on appeal.

The trial court in its original order for summary judgment dated June 28, 1976, found that the acquittal of respondent for murder in a jury trial is a conclusive determination that her conduct was lawful within the meaning of Probate Code section 258. The judgment on July 26, 1976, and the final judgment of November 12, 1976, did not set forth the reasons for the granting of the summary judgment. The issue to be resolved in this case is whether the summary judgment was properly granted or whether the court was presented with a factual issue still to be resolved: "Were the respondent's acts civilly wrongful so as to preclude her from enjoying the insurance proceeds?" The resolution of the issue depends upon whether or not Probate Code section 258 applies to this case.

3. ■ *The conclusive presumption of Probate Code section 258 of the lawfulness of the cause of death applies to this case.*

Probate Code section 258 provides in part: "No person who has unlawfully and intentionally caused the death of a decedent, . . . shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; . . . *A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section.*" (Italics added.)

Probate Code section 258 applies to insurance proceeds. (*Estate of McGowan,* 35 Cal.App.3d 611, 615 [111 Cal.Rptr. 39].) Along with Civil Code sections 2224 and 3517, this code section states a public policy that any one who has deliberately and without justification killed another will not profit from his wrong. (*New York Life Ins. Co. v. Cawthorne,* 48 Cal.App.3d 651, 654 [121 Cal.Rptr. 808]; *Beck v. West Coast Life Ins. Co.,* 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979].)

Since Probate Code section 258 forms a statutory expression and means of applying the general public policy, all of section 258 should be considered and applied in any case where that public policy is in issue. Thus, it follows that although the last sentence states a conclusive presumption "for the purposes of *this section*" the issue of the presumption is not limited to cases of claims on estate or probate property alone but applies equally to cases of insurance claims such as at bench.

The last sentence of Probate Code section 258 was added in 1963 to provide: "A conviction or *acquittal* on a charge of murder or involuntary

manslaughter shall be a *conclusive determination* of the unlawfulness or lawfulness of a causing of death, for the purposes of this section." (Italics added.) In the instant case respondent was acquitted of murder after a jury trial. Appellants argue that the exclusion of certain evidence prevented this from being a full trial on the merits; they contend that as a result of the court's ruling respondent was allowed to appear innocent.[5] They rely on *Beckner* v. *Sears, Roebuck & Co.,* 4 Cal.App.3d 504, 510 [84 Cal.Rptr. 315], 65 Harv.L.Rev. 878, 25 So.Cal.L.Rev. 480, 46 Am.Jur.2d 774. *Beckner* v. *Sears, Roebuck & Co., supra,* and similar cases, some of which are cited in *Beckner,* are inapplicable. Such cases involved only the general rule that an acquittal in a criminal case does not necessarily preclude litigation of the facts of the offense in a civil case. Those cases do not deal with the question of the application of a specific statute conclusively determining the issue of fact of lawfulness as at bench.

In *Estate of McGowan, supra,* 35 Cal.App.3d at page 618, the last sentence of section 258 was held under some circumstances not to state a conclusive presumption of innocence. The court stated in *McGowan* that an acquittal of murder as the result of a negotiated plea of nolo contendere did not act as a conclusive presumption under Probate Code section 258. The court stated at page 618: "We cannot believe that the last sentence of section 258 was meant to effect such a drastic restriction on the broader prohibition of the first sentence, which is based on well-established and sound public policy. . . . the last sentence merely expresses a procedural application of a previous factual resolution of innocence or guilt. . . ."

Appellants similarly contend that the court should apply the public policy recognized in the first part of section 258 and reinforced by Civil Code sections 2224 and 3517 to allow a redetermination of the civil lawfulness of respondent's acts. Appellants also contend that an improper application of the presumption could violate the constitutional rights of third parties; the effect could be to deprive appellants of valuable rights to which they would be entitled without due process of

---

[5]The following testimony of a Los Angeles police officer regarding decedent's statement to the officer at the scene apparently was excluded at the criminal trial: ". . . that he [decedent] had went over there to make a property settlement and when he opened the door she [respondent herein] shot him one time in the chest and he fell to the floor inside the entryway there and she came back about a half hour later and shot him three times in the stomach. She came back a half hour later after that and shot him one time in the side."

law if there is no rational connection between the fact presumed and the ultimate fact. *McGowan, supra,* 35 Cal.App.3d at page 619, states: "The last sentence of Probate Code section 258, as construed by the probate court, fails to meet this test to the extent that an acquittal of the greater crime resulting from a plea bargain in a criminal case should be a conclusive determination in a subsequent civil litigation of the lawfulness of the killing. The acquittal in such instance does not establish innocence of the greater crime charged, but merely means that the prosecution and the defendant have concluded that it is to their mutual advantage not to proceed to the ordeal of a trial in the particular case. . . ."

Of course, the obvious difference in the case at bench hardly needs mentioning. Here the claimant has been tried by jury and acquitted. In enacting Probate Code section 258 we must assume that the Legislature at a minimum wished to avoid the duplication of fact finding. Where once the fact has been affirmatively determined it should not be retried. We are aware that:

"There are many conditions to a judgment of acquittal which preclude its being regarded as a determination of the question of guilt on the merits. . . . There have been an even greater number of acquittals in which positive evidence of the guilt of the defendants was excluded because it had been obtained illegally, and the defendants were acquitted because of the insufficiency of the admissible evidence produced by the People.

". . . . . . . . . . . . . . . . . .

"As a result of [such rulings an acquitted person might] . . . present to the jury a completely fictitious case. [She can be] made to appear as an innocent [person]." *(Beckner, supra,* 4 Cal.App.3d at pp. 509-510.)

However, we must also assume that the Legislature was aware of the difference in the degrees of proof necessary to convict in a criminal case and that necessary to prove a civil cause of action. Nonetheless the Legislature made the determination of the fact of lawfulness or unlawfulness conclusive by either a conviction or an acquittal. The policy of avoiding duplicate and endless litigation of the same issue seems to have been reasonably balanced by the Legislature against the possible denial to some few litigants in civil cases of their individual right to prove a cause of action against an alleged wrongdoer.

In *Estate of Kramme,* 20 Cal.3d 567 [143 Cal.Rptr. 542,573 P.2d 1369], the Supreme Court considered the right of intestate succession by a husband who "wrongfully but unintentionally" caused his wife's death. The language of the court is nonetheless applicable to the case at bench involving insurance proceeds. *Kramme* declares that Probate Code section 258 as the specific statute determines the right to receive and that the more general rules expressed in Civil Code sections 2224 and 3517 are not applicable to defeat the right of the spouse to receive. Accordingly, at bench the acquittal of murder forecloses reexamination of the issues of the wrongfulness or intent of wife's act under either Civil Code sections 2224 or 3517.

Relying on *Beckner* appellants' argument implies that in the criminal case the evidence of decedent's statement as to how he was shot was improperly excluded and that the same evidence would be properly admissible in the civil case. Appellants are totally in error. The present case does not deal with the exclusion of otherwise admissible evidence because it was illegally obtained or any such other rule not related to the probative value of evidence. Here the court ruled upon an objection relative to the trustworthiness of the excluded evidence. ■ Hearsay evidence is inadmissible unless it comes within an exception to the hearsay rule. The exceptions generally permit hearsay evidence because they have as their basis some element that gives to the hearsay evidence a high degree or probability of trustworthiness. One of these exceptions is the dying declaration. But the determination here of whether the decedent's remarks as he lay wounded, were sufficient to qualify as a dying declaration, was entirely within the trial judge's discretion. In this particular case the ruling of the trial judge in the murder case was not the exclusion of "trustworthy" evidence or proof positive or evidence which clearly and unerringly and without question established guilt of murder or of wrongfulness of the act of the wife. Rather it was the nonadmission of a remark which did not qualify as a dying declaration. It did not have the standards needed to be classed as highly trustworthy. We cannot say as a matter of law that the trial court in the murder case erred in the threshold decision to reject the evidence on the basis that it did not constitute a valid dying declaration.

The judgment is affirmed.

Roth, P. J., concurred.

**FLEMING, J.,** Concurring.—I suspect that in the criminal prosecution the ruling excluding the dying declaration of the husband may have been erroneous and at odds with the policy of Evidence Code section 1242, which recognizes dying declarations of the victim as evidence of the cause and circumstances of his death. However, that ruling has long since become final and is not reviewable in this civil proceeding. The controlling fact here is respondent's acquittal in the criminal proceeding. Under Probate Code section 258 such acquittal forecloses further examination of respondent's conduct in connection with her husband's death and compels affirmance of the judgment.

A petition for a rehearing was denied March 29, 1978, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1978.