[Civ. No. 43826. First Dist., Div. Four. Mar. 29, 1979.]

Estate of JAMES NOEL LADD, Deceased.
ROBERT BEALE, as Administrator, etc., Petitioner and Respondent, v.
GLORIA B. LADD, Claimant and Respondent;
GEORGE F. LADD, Claimant and Appellant.

Estate of JOHN CHRISTOPHER LADD, Deceased.
ROBERT BEALE, as Administrator, etc., Petitioner and Respondent, v.
GLORIA B. LADD, Claimant and Respondent;
GEORGE F. LADD, Claimant and Appellant.

**COUNSEL**

Michael J. Oliver for Claimant and Appellant.

No appearance for Petitioner and Respondent.

Wright & Boudett and John L. Boudett for Claimant and Respondent.

## Opinion

CHRISTIAN, J.—George F. Ladd, claimant to the heirship in the estates of James Noel Ladd and John Christopher Ladd, appeals from an order determining that Gloria B. Ladd (respondent) is the sole heir of both decedents.

Gloria Ladd killed her two teenaged sons, James and John. Appellant concedes that the motivation for the killings was that respondent was contemplating suicide and "didn't want them upset by being homeless orphans and other trauma that goes with suicide." Respondent was charged with murder (Pen. Code, § 187) and pleaded not guilty and not guilty by reason of insanity. A judge sitting without a jury found her guilty of murder in the first degree, and insane at the time of the commission of the offense. Upon a further finding that respondent had not recovered her sanity, the court rendered judgment committing her to a state hospital for treatment. (See Pen. Code, § 1026.)

James and John died intestate. The administrator of their estates petitioned the court for an order determining heirship. (Prob. Code, § 1080.) The superior court determined that respondent is the sole heir to the estates of her two sons. (Prob. Code, § 225.) This appeal by a paternal uncle of James and John challenges the order.

Appellant contends that respondent is barred from inheriting decedents' estates by Probate Code section 258, which provides in part:[1] "No person who has unlawfully and intentionally caused the death of a decedent . . . shall be entitled to succeed to any portion of the estate or to take under any will of the decedent. . . . A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive

[1]Probate Code section 258 provides in its entirety: "No person who has unlawfully and intentionally caused the death of a decedent, and no person who has caused the death of a decedent in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, Penal Code, shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

■ The laws of inheritance and testamentary disposition are wholly statutory and subject to legislative control, and do not depend on the ideas of the courts as to justice and natural rights. (See *Estate of Kirby* (1912) 162 Cal. 91, 94 [121 P. 370]. See also *Estate of Kramme* (1978) 20 Cal.3d 567, 571, 572, 575 [143 Cal.Rptr. 542, 573 P.2d 1369].) The issue on appeal is whether the Legislature intended to terminate the inheritance rights of a person who was insane at the time he caused the death of a decedent. This is an issue of first impression in California. (But see McGovern, *Homicide and Succession to Property* (1969) 68 Mich.L.Rev. 65, 90-97, and authorities cited.) Specifically, the court must determine what effect the Legislature intended a finding of insanity under Penal Code section 1026 to have on the issue of whether a person "unlawfully and intentionally" caused the death of a decedent under Probate Code section 258. ■ Because section 258 terminates an otherwise valid right to inherit, this court will not construe the statute to work a forfeiture in the absence of a clear indication that the Legislature so intended. (*Estate of Kramme, supra,* 20 Cal.3d 567, 572.)

The language and legislative history of section 258 are relevant to determine the Legislature's intent. (See generally *Estate of McGowan* (1973) 35 Cal.App.3d 611, 616-618 [111 Cal.Rptr. 39]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 24, pp. 5545-5547.) Present section 258 was originally enacted as section 1409 of the Civil Code, which provided in pertinent part: "No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; . . ." The Legislature apparently enacted section 1409 in response to one event: "On November 10, 1904, an atrocious murder occurred in California. A youth named Weber murdered his whole family for the purpose of succeeding to the property. The facts of the case are set forth in the report of the criminal prosecution for the crime. [See *People* v. *Weber* (1906) 149 Cal. 325 (86 P. 671).] The people of the state were greatly incensed that he should be allowed to take the property, and the press heaped reproaches upon a system of law which would permit such injustice. So far as I have been able to discover, the devolution of the property was not contested, at least in the appellate courts, and the property was used in paying the attorneys who unsuccessfully defended the murderer in the criminal trial. Popular indignation led to the adoption in 1905 [of Civil Code section 1409]." (Note, *Public Policy as Affecting Property Rights Accruing to a Party as a Result of Wrongful*

*Acts* (1913) 1 Cal.L.Rev. 397, 407-408.) The Legislature broadened the statute in 1955 to terminate the inheritance rights of claimants convicted of voluntary manslaughter. (See also *Estate of Kirby, supra,* 162 Cal. 91, 94.)

The Legislature made several changes in 1963. (See generally *Probate Code* (1963) 38 State Bar J. 769.) The reference to a person "convicted of the murder or voluntary manslaughter of the decedent" was changed to a person "who has unlawfully and intentionally caused the death of a decedent." This amendment was perhaps designed for the murder-suicide cases. (See *Estate of McGowan, supra,* 35 Cal.App.3d 611, 617.) The 1963 amendments also added the second sentence, providing that a conviction or acquittal of murder or voluntary manslaughter shall be a conclusive determination of whether the claimant "unlawfully and intentionally" caused the decedent's death. This provision prevents relitigation in probate proceedings of issues that have been decided in prior criminal proceedings. (See *Wilson* v. *Wilson* (1978) 78 Cal.App.3d 226, 234 [144 Cal.Rptr. 180]; *Estate of McGowan, supra,* 35 Cal.App.3d 611, 618.)

■ For purposes of section 258, the Legislature classified persons who are accused of causing the death of a decedent into four categories:

1. If the person has not been convicted or acquitted of murder or voluntary manslaughter, the probate court must determine whether or not the claimant "unlawfully and intentionally" caused the death of a decedent to decide whether or not section 258 terminates the claimant's inheritance rights. (See *Estate of Kramme, supra,* 20 Cal.3d 567.)

2. If a person is acquitted of murder or voluntary manslaughter, the acquittal is a conclusive determination that the person did not "unlawfully and intentionally" cause the death of the decedent and section 258 does not terminate the claimant's inheritance rights. (See *Wilson* v. *Wilson, supra,* 78 Cal.App.3d 226, 232-235. But see *Estate of McGowan, supra,* 35 Cal.App.3d 611, 615-620.)

3. If a person is convicted of murder or voluntary manslaughter, the conviction is a conclusive determination that the person "unlawfully and intentionally" caused the death of a decedent, and section 258 terminates his or her inheritance rights.

4. If a person caused the death of a decedent in the perpetration of or attempt to perpetrate certain specified felonies, the person is not entitled to an interest in the decedent's estate.

Inferably, the Legislature based these classifications on the mental state or culpability of the person who caused the death of a decedent, or on the punitive value of section 258. (Cf. *People* v. *Holt* (1944) 25 Cal.2d 59, 86 [153 P.2d 21], quoted in *People* v. *Wolff* (1964) 61 Cal.2d 795, 820 [40 Cal.Rptr. 271, 394 P.2d 959] [murder and manslaughter distinctions based on the "quantum of personal turpitude" or "personal depravity" of offenders]. See also Kadish & Paulsen, Criminal Law and Its Processes (3d ed. 1975) pp. 1-39.)

Respondent pleaded not guilty and not guilty by reason of insanity to a charge of first degree murder. By stipulation the two pleas were tried together (cf. Pen. Code, § 1026). The plea of guilty was decided first; respondent was presumed sane at this guilt phase. The trial court determined that respondent was guilty of first degree murder. This finding did not constitute a "conviction" of murder for purposes of section 258. The word "conviction" has several meanings in California law. (See *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 412-418 [139 Cal.Rptr. 473], and authorities cited.) Section 258, by terminating the inheritance rights of certain persons, imposes a civil penalty or disability upon those persons. ■ In the context of statutes or constitutional provisions imposing civil penalties or disabilities, the term "conviction" has never been construed to mean a verdict or finding of guilt. "Conviction" takes place only after a determination of guilt and the pronouncement of judgment by the court. The trial court did not pronounce judgment at the guilt phase. The court went on to the insanity plea and found that respondent was insane at the time of the offense and had not recovered her sanity by the time of trial. The court rendered judgment committing respondent to a state hospital for treatment. (See generally Pen. Code, §§ 1026, 1026a. See also *People* v. *Walker* (1948) 33 Cal.2d 250, 267 [201 P.2d 6].)

■ It is reasonable to conclude that the Legislature intended that this judgment constitute an "acquittal" for purposes of section 258. First, the California courts refer to a judgment entered after a finding of insanity as an acquittal. (See, e.g., *People* v. *Drew* (1978) 22 Cal.3d 333, 344 [149 Cal.Rptr. 275, 583 P.2d 1318].) Second, this conclusion is consistent with the legislative scheme implicit in section 258. In terms of the mental state or culpability of the person who causes the death of a

decedent, or the punitive value of section 258, a finding of insanity is analogous to an acquittal of murder or manslaughter. The purpose of the insanity test is to identify those persons who, owing to mental incapacity, should not be held criminally responsible for their conduct. (*People* v. *Drew, supra,* 22 Cal.3d 333, 339.) Section 258 refers to a person who has "unlawfully and intentionally" caused the death of a decedent. Insane persons are not capable of committing crimes. (Pen. Code, § 26. See also Pen. Code, § 15.) Insane persons therefore are not capable of acting "unlawfully" for purposes of section 258. In every crime or public offense there must exist a unity of act and intent, or criminal negligence (Pen. Code, § 20). Although intent or intention is manifested by the circumstances connected with an offense and by the sound mind and discretion of the accused, insane persons are not of sound mind (Pen. Code, § 21). Insane persons therefore are not capable of acting "intentionally" for purposes of section 258.

This conclusion, that the Legislature intended that a judgment after a finding of insanity constitute an acquittal for purposes of section 258, is bolstered by a review of the insanity and diminished capacity defenses. A finding of diminished capacity or of insanity is a conclusion drawn from evidence of a defendant's mental condition. (*People* v. *Wetmore* (1978) 22 Cal.3d 318, 323-331 [149 Cal.Rptr. 265, 583 P.2d 1308].) The same evidence of mental condition is admissible under either defense. (*Id.*) The *Drew* definition of insanity is close to the definition of diminished capacity that California courts, conscious of the inadequacies of the M'Naghten test of insanity, developed over the years. (Compare the American Law Institute insanity test, quoted in *People* v. *Drew, supra,* 22 Cal.3d 333, 345,[2] with the standard of diminished capacity adopted in *People* v. *Poddar* (1974) 10 Cal.3d 750, 758, 760 [111 Cal.Rptr. 910, 518 P.2d 342].[3] See also *People* v. *Wetmore, supra,* 22 Cal.3d 318, 330.) For these reasons, the California Supreme Court has criticized the bifurcated trial segregating the insanity and diminished capacity defenses. (*People* v. *Wetmore, supra,* 22 Cal.3d 318, 330-331; *People* v. *McDowell* (1968) 69 Cal.2d 737, 747, fn. 4 [73 Cal.Rptr. 1, 447 P.2d 97].)

[2] "'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.'"

[3] "First, was the accused because of a diminished capacity unaware of a duty to act within the law? . . . Second, even assuming that the accused was aware of this duty to act within the law, was he, because of a diminished capacity, unable to act in accordance with that duty?" (*Id.,* at p. 758; see also *id.,* at p. 760 ["a person's ability to conform his conduct to that comprehended duty"].)

A criminal defendant charged with murder or voluntary manslaughter could raise the diminished capacity defense to establish that he did not form the mental state necessary to commit the offense. If successful, the defendant could be acquitted of the higher offense and convicted of involuntary manslaughter. (See *People* v. *Ray* (1975) 14 Cal.3d 20, 28 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People* v. *Mosher* (1969) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659].) This acquittal would constitute a conclusive determination that the person had not "unlawfully and intentionally" caused the death of the decedent, and section 258 would not terminate his inheritance rights. Alternatively, the same defendant could raise only an insanity defense and obtain a judgment based on a finding of insanity. The result under section 258 should turn on the mental state or culpability of the person who causes the death of the decedent, or on the punitive value of section 258, and not on the technical structure of the criminal law. (See *Estate of McGowan, supra,* 35 Cal.App.3d 611, 617-620.) Because the diminished capacity and insanity defenses are so close, the judgment following a finding of insanity, like the acquittal based on diminished capacity, should constitute an acquittal and a conclusive determination that the defendant did not "unlawfully and intentionally" cause the death of the decedent.

We conclude that section 258 does not preclude inheritance by respondent from her sons.

■ Appellant also contends that he is entitled to an interest in decedents' estates under Probate Code section 229, subdivision (b),[4] and that the trial court erred when it determined that respondent was the sole heir under Probate Code section 225.[5] The burden of proof was on appellant to establish that he was entitled to an interest in decedents' estates under section 229. (*Estate of Westerman* (1968) 68 Cal.2d 267, 274-275 [66 Cal.Rptr. 29, 437 P.2d 517]. See also *Estate of Hoegler* (1978) 82 Cal.App.3d 483 [147 Cal.Rptr. 289].) The administrator filed a petition to determine heirship. (Prob. Code, § 1080.) Appellant filed a one-

[4]Probate Code section 229, subdivision (b), provides: "If the decedent leaves neither issue nor spouse, that portion of the estate created by gift, descent, devise, or bequest from the separate property of a parent or grandparent shall go to the parent or grandparent who made such gift, devise, or bequest or from whom the property descended, or if such parent or grandparent is dead, such property shall go in equal shares to the heirs of such deceased parent or grandparent."

[5]Probate Code section 225 provides: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation."

sentence "statement of claim of interest" asserting that he was entitled to a share of decedents' estates "pursuant to California Probate Code sections 228 and 229." The documentary evidence of the sources of the decedents' estates included in the record on appeal does not establish appellant's claim. There is no reporter's transcript of oral proceedings, and no indication in the record that appellant introduced any other evidence of his alleged interest in the estates. Based on the record on appeal, this court cannot conclude that the trial court erred when it found that respondent was the sole heir under section 225.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.