Allen L. TURNER, Appellant,

v.

ESTATE of David G. TURNER, Appellee.

Allen L. TURNER, Appellant,

v.

ESTATE of Barbara J. TURNER, Appellee.

No. 1–1182A325.

Court of Appeals of Indiana, First District.

Oct. 18, 1983.

Rehearing Denied Nov. 30, 1983.

Larry D. Combs, Franklin, for appellant.

John P. Wilson, Greenwood, for appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Johnson County Superior Court (Superior Court) declared Allen L. Turner (Allen) a constructive trustee of his intestate share of his parents' estates. The court also ordered certain life insurance proceeds to be held in trust by his guardian *ad litem* pending the outcome of this appeal.

Allen appeals from both the imposition of the constructive trust and the court's refusal to release the life insurance proceeds. We reverse.

## FACTS

Allen shot and killed his parents, David and Barbara Turner, on May 20, 1980. The following day Allen was charged with their murders in the Johnson County Circuit Court. On September 23, 1981, Allen was found not responsible by reason of insanity [1] for his parents' deaths.

Both David and Barbara Turner died intestate leaving as their sole heirs at law their three children, Allen, Linda, and Janet. Accordingly, each child was entitled to an intestate share from each estate. Allen's share totalled $39,299.99. Also, as a beneficiary of a life insurance policy covering his mother's life, Allen was entitled to $3,879.57 in proceeds.

Following their parents' deaths, Linda and Janet were appointed as administratrices of the resulting estates. Thereafter, they successfully petitioned the Superior Court to appoint a guardian *ad litem* for Allen on grounds of incompetence.

At the conclusion of Allen's criminal trial,[2] the sisters renewed a previously filed

---

1. Indiana Code section 35–5–2–3 has since been repealed. For present law see Indiana Code section 35–36–2–3 (1983 Supp.).

2. Generally, the results reached in criminal proceedings are not considered *res judicata* in civil cases, in part, because of the difference in the burden of proof. *Swingle v. State Employees' Appeal Commission,* (1983) Ind.App., 452 N.E.2d 178, 182; *contra* Indiana Code section 34–3–18–1 (1983 Supp.) (evidence of final judgment in criminal action following guilty plea or conviction admissible in a subsequent civil action). However, at the time of Allen's criminal trial he had the burden of establishing his insanity by a preponderance of the evidence, Indiana Code section 35–41–4–1; the same being

petition requesting the Superior Court to terminate Allen's right to receive his intestate share. Following a hearing, the court entered judgment in favor of the estates.[3] Therein, the court found that inasmuch as the provisions of Indiana Code section 29–1–2–12[4] were grounded in equity and looked to substance over form, Allen should not be permitted to benefit from his wrongdoing, and therefore, should serve as constructive trustee of his intestate share of the estates. Further, the court ordered that the insurance proceeds claimed by Allen should be held in trust by his guardian pending the outcome of the present appeal.

## ISSUE

Allen has delineated nine separate issues in his brief. However, we believe the issue stated below adequately addresses Allen's concerns.

Did the trial court err in finding Allen must serve as a constructive trustee of his intestate share and be precluded from receiving the life insurance proceeds?

## DISCUSSION AND DECISION

■ The trial court erred in finding Allen should serve as constructive trustee of his intestate share, and that he should be precluded from receiving the insurance proceeds during the pendency of this appeal.

We therefore reverse the trial court and find that Allen should be allowed to receive his intestate share as well as the insurance proceeds.

Allen's fundamental contention is that because he was not convicted of murdering his parents, Indiana Code section 29–1–2–12 is inapplicable in the present case. Consequently, Allen argues, the trial court's reliance thereon in ordering him to serve as constructive trustee was erroneous.

In support of his argument, Allen analogizes the instant case to criminal cases wherein an insanity defense is successfully asserted. In such instances, the defendant is said to lack any wrongful intent and is, therefore, not subject to punishment for an otherwise illegal act. It follows, Allen submits, that inasmuch as he was found to lack any wrongful intent in the killing of his parents—and was not subject to punishment therefore—he should not be punished now by being deprived of his intestate share.[5]

As authority for his argument Allen directs us to the cases of *In re Estate of Vadlamudi,* (1982) 183 N.J.Super. 342, 443 A.2d 1113, and *In re Eckardt's Estate,* (1945) 184 Misc. 748, 54 N.Y.S.2d 484. In the latter case it was held the wife could not be denied her share of insurance proceeds and other assets from her husband's

true in the instant case. While neither party raises the issue, we note that the doctrine of collateral estoppel may well have been applicable under the present circumstances inasmuch as the issue and burden of proof were identical in both the criminal and civil proceedings.

3. We would direct the attention of counsel for the appellant to Ind.Rules of Procedure, Appellate Rule 8.3(A)(4) which requires a verbatim statement of the judgment to be included in the statement of the case.

4. "A person who shall have been legally convicted of intentionally causing the death of another, or of aiding or abetting therein, shall, in accordance with the rules of equity, become a constructive trustee of any property, real or personal, acquired by him from the decedent or his estate because of such death, for the sole use and benefit of those persons legally entitled thereto other than such guilty person, saving to all innocent purchasers for value interests therein acquired in good faith. Such conviction

shall be final and conclusive in any subsequent suit to charge him as such constructive trustee. [Acts 1953, ch. 112, § 212, p. 295.]"

5. The verdict returned in Allen's criminal trial, not responsible by reason of insanity, was one of three verdicts available to the jury at that time, the other two being guilty and not guilty. Ind.Code § 35–5–2–3.

Effective September 1, 1982, our legislature added the verdict of guilty but mentally ill. Ind.Code § 35–36–2–3(4) (1983 Supp.). This additional verdict was not, however, available to the jury at the time of Allen's criminal trial. Accordingly, we expressly limit our holding herein to cases in which the verdict returned in the criminal trial is not responsible by reason of insanity. The question of whether an individual found guilty but mentally ill could be barred from sharing in the victim's estate is not before us.

estate following her acquittal for his murder on grounds of insanity.

The court concluded that "legally the wife committed no wrong, not knowing at the time the nature and quality of her act and that therefore she is entitled to take as distributee. The same principle is applied to the life insurance proceeds." *Eckardt,* 184 Misc. at 755, 54 N.Y.S.2d at 490.

*Vadlamudi,* like the present case, implicated a statutory provision which prohibited a killer from inheriting from the deceased; however, unlike our statute which requires a conviction, the New Jersey statute required only a showing that the killing was intentional. N.J.S.A. 3A:2A–83. In light of this statute, the New Jersey court held that, as a matter of law, one found not guilty by reason of insanity of murder could not be said to have perpetrated the act intentionally. Thus, the killer could not be denied a share of the victim's estate. *Vadlamudi,* 183 N.J.Super. at 349, 443 A.2d at 1117.

The issue herein raised is one of first impression in this state. Thus, while Allen has directed our attention to two of the relevant authorities, we believe a full understanding of the issue before us can only be gained by a reading of several additional decisions. A review of those cases, together with *Vadlamudi,* and *Eckardt,* reveals the decided trend is in Allen's favor.

In a case of first impression in California, that state's appellate court held a mother found not guilty by reason of insanity for the killings of her sons could not be denied her share of the proceeds from their estates. *Estates of Ladd,* (1979) 91 Cal.App.3d 219, 153 Cal.Rptr. 888. The court noted that California's statutory provision which prohibited a killer from inheriting from the victim, did so only when the killing was "unlawfully and intentionally" perpetrated. *Id.* 91 Cal.App.3d at 222, 153 Cal.Rptr. at 892. Holding the mother's insanity rendered her incapable, as a matter of law, of killing her sons in an unlawful and intentional manner, the court concluded she could not be precluded from her share of

their estates. *Id.* Cal.App.3d at 226–27, 153 Cal.Rptr. at 894.

Likewise, the Minnesota Supreme Court has held that an insane killer could not be denied his share in the victim's estate. *Anderson v. Grasberg,* (1956) 247 Minn. 538, 78 N.W.2d 450. Therein, the husband was found insane and therefore incapable of standing trial for the murder of his wife. Notwithstanding this lack of prosecution, the court held the husband's insanity prevented the killing from being an intentional act, and thus, he could not be precluded from succeeding to the couple's jointly held property. The court stated its rationale in these terms:

"In giving effect to the equitable doctrine that a person should not profit by his own wrong, a constructive trust may be imposed whenever the legal title to property is obtained under such circumstances that it would be unconscionable for the holder of the legal title to retain and enjoy the beneficial interest. When the killer is insane, however, examination is necessary to determine whether the basis upon which the doctrine rests still exists. Insanity has been recognized in all civilized countries as a defense against punishment for crime, and this has been so because, if the perpetrator is so mentally diseased that he does not have the intent or animus in the commission of the crime, the act lacks the elements which constitute the crime the law seeks to punish. These general principles would seem to apply with equal vigor in determining whether the survivor has committed a legal wrong in killing his joint tenant, for if his mind was so diseased that it was the disease and not his own will which caused the act to be committed, it cannot fairly be said that he has committed a wrong for which the law should upset the customary legal rights of property ownership."

*Id.* 247 Minn. at 546–47, 78 N.W.2d at 456 (footnotes omitted).

A similar result has been reached in both Florida and Texas. *Hill v. Morris,* (1956) Fla., 85 So.2d 847; *Simon v. Dibble,* (1964)

Tex.Civ.App., 380 S.W.2d 898. In the former case, the Florida Supreme Court held a wife could not be denied her dower interest where she had killed her husband but was found not guilty by reason of insanity for his murder. In so finding, the court stated:

> "The effect of the judgment of acquittal by reason of insanity was to establish conclusively that petitioner was not guilty of the public offense with which she was charged, because *as a matter of criminal law* she lacked the capacity to commit the crime. . . . [Moreover,] it establishes that she cannot in any event be subjected to the bar which the legislature has made an integral part of the Florida Probate Law.[6] If the bar should be extended, it is a task for the legislature."

*Hill,* 85 So.2d at 851 (emphasis original).

Like the result in *Hill,* the Texas appellate court concluded in *Simon* that a husband should be allowed to receive life insurance proceeds from a policy covering his wife following his acquittal for her murder on grounds of insanity. *Simon,* 380 S.W.2d at 899.

The foregoing trend is also reflected in a series of cases arising in New York. *In re Fitzsimmons' Estate,* (1970) 64 Misc.2d 622, 315 N.Y.S.2d 590; *In re Estate of Wirth,* (1969) 59 Misc.2d 300, 298 N.Y.S.2d 565; *In re Estate of Lupka,* (1968) 56 Misc.2d 677, 289 N.Y.S.2d 705; *see also Eckardt's Estate.* The facts in *Lupka* were similar to those in *Anderson* insofar as the husband was not prosecuted for his wife's murder, but rather, found insane and incapable of standing trial. As in *Anderson,* the *Lupka* court held that because of the husband's insanity, he lacked the requisite wrongful intent when he killed his wife, and therefore, could take as a distributee under her will. *Lupka,* 56 Misc.2d at 680, 289 N.Y.S.2d at 708.

The same rationale prompted the *Wirth* court to conclude that a husband could receive his distributive share of his wife's estate following his acquittal for her murder on grounds of insanity. The court stated the essence of its holding as follows: "Therefore, it appears that where one benefited from an unlawful act such as a killing committed without intent because of insanity, it cannot be concluded that he perpetrated the act with the end in view of profiting thereby." *Id.* 59 Misc.2d at 302, 298 N.Y. S.2d at 567.

Finally, on facts strikingly similar to those now before us, the *Fitzsimmons* court, without elaboration, simply held that a son who killed both his parents, but was found innocent of their murders by reason of insanity, should be allowed to receive his distributive share. *Id.* 64 Misc.2d at 624, 315 N.Y.S.2d at 593.

Despite this trend in the authorities, the sisters argue the present case is controlled by the holding in *National City Bank of Evansville v. Bledsoe,* (1957) 237 Ind. 130, 144 N.E.2d 710. In that case, the husband killed his wife and immediately thereafter committed suicide, thereby avoiding prosecution for her murder. At issue was the disposition of certain property which the couple had held as tenants by the entireties. The husband's estate argued that inasmuch as the husband had not been *convicted* of murdering his wife, the statute[7] did not require the imposition of a constructive trust. Therefore, the estate concluded, since the husband survived the wife, her interest in the property passed to him upon her death, and then into his estate upon his suicide.

The supreme court rejected this argument, noting at the outset that the statute was inapplicable because the husband had not been convicted. *Id.* 237 Ind. at 137, 144 N.E.2d at 713. Nevertheless, the court reasoned imposition of a constructive trust was still required. The basis of its conclusion was that the statute had been written in light of prevailing equitable principles and

---

6. The provision referred to, Florida Statute section 731.31, like Indiana Code section 29-1-2-12, required a conviction in order to bar a killer from sharing in the victim's estate. (For present law see Fla.Stat. § 732.802 (1983)).

7. Then Burns' section 6-212 (1953 Replacement).

was not intended to supersede those principles, but merely to supplement them. *Id.* 237 Ind. at 141, 144 N.E.2d at 715, n. 13. Accordingly, the court declared:

"The fact that the Indiana Legislature has passed a statute providing that the slayer shall not take the beneficial interest of property from the decedent if he is convicted of intentionally causing such death (but shall be a constructive trustee thereof) does not necessarily mean that he shall take the beneficial interest if he is not convicted. If under the prevailing rules of equity apart from the statute, the murderer is precluded from taking the property whether or not he has been convicted of the murder, ... the murderer should be precluded from taking the property if it is established in the civil proceeding that he committed the murder even though he has not been convicted in a criminal proceeding; either because he committed suicide before he was tried, or because the criminal proceeding has not been completed, or even because he has been acquitted in the criminal proceeding."

*Id.* 237 Ind. at 141–42, 144 N.E.2d at 715 (footnotes omitted).

In light of *Bledsoe,* the sisters urge that notwithstanding the absence of a conviction, equitable principles alone preclude Allen from receiving his intestate share. The sisters reason that such an extension of *Bledsoe* is appropriate inasmuch as the supreme court stated therein that under the prevailing rules of equity, a conviction is not necessary to warrant the imposition of a constructive trust. Indeed, such an extension of *Bledsoe* is plausible. However, we cannot, in view of the authorities heretofore discussed, make such an extension.

Allen was not convicted of his parents' murders. Hence, Indiana Code section 29–1–2–12 is wholly inapplicable in the instant case. If our inquiry ended here, *Bledsoe* would be persuasive, indeed controlling under the prevailing rules of equity. However, the fact that Allen was not convicted because of his insanity greatly complicates the issue before us. From our reading of *Bledsoe,* we cannot discern that the supreme court envisioned or intended its holding to be extended to a case in which a conviction was not obtained because of the insanity of the individual in question. By its express language, *Bledsoe* limits its application to cases in which a conviction has not been obtained "because he committed suicide before he was tried, or because the criminal proceeding has not been completed, or even because he has been acquitted in the criminal proceeding." *Id.* 237 Ind. at 141–42, 144 N.E.2d at 715. Not only is this language dicta, but more importantly, none of these enumerated instances occurred in the instant case. Moreover, an application of equitable principles in light of Allen's insanity leads us to conclude he should not be denied his intestate share.

In finding Allen was insane, the jury in his criminal trial determined, in essence, that Allen lacked any wrongful intent when he killed his parents. Indeed, to quote from the applicable statute, Allen was found to lack the "substantial capacity either to appreciate the wrongfulness of the conduct or to conform his conduct to the requirements of law." Ind.Code § 35–41–3–6(a). Thus, we are compelled to conclude, as did the *Eckardt* court, that "legally [Allen] committed no wrong, not knowing at the time the nature and quality of [his] act ...." *Id.* 184 Misc. at 755, 54 N.Y.S.2d at 490. Therefore, the equitable doctrine which bars a person from profiting from his wrongful conduct is of no application here.

The result we reach, while firmly grounded in legal precedent, may prove unpalatable to some. However, it is not our office to find the law one way and hold to the contrary. If the law as it now exists is in need of change, that task is for the legislature.

We hold, therefore, that the trial court's decision to impose a constructive trust must be reversed, and its order regarding the insurance proceeds vacated. Accordingly, Allen Turner is entitled to his intestate share of the estates and his share of the insurance proceeds as well.

Reversed.

ROBERTSON, P.J., and NEAL, J., concur.