NATIONAL CITY BANK OF EVANSVILLE, ETC. ET AL. *v.* BLEDSOE ET AL.

[No. 29,568.   Filed September 12, 1957.]

132

*James D. Lopp* and *John D. Clouse,* both of Evansville, for appellants.

*Lorin H. Kiely,* of Evansville, for appellees.

LANDIS, J.—This case involves the question of what happens to the title to real estate held by husband and wife as tenants by the entirety, when one tenant murders the other tenant, and thereupon commits suicide.[1]

This is the second appeal of this case, the same having previously been reversed for the failure of the complaint to state which spouse survived the other.[2]

In the case before us, appellant-personal representative of the wife's estate (hereinafter referred to as appellant), brought proceedings in the Vanderburgh Probate Court to sell real estate to pay debts and made appellee-personal representative of the husband's estate (hereinafter referred to as appellee) a defendant with others. In such complaint, appellant alleged the deceased husband,

"... Bynus W. Bledsoe, purposely and with premeditated malice shot, killed and murdered the decedent [wife], Thelma Able Bledsoe, at approximately 9:50 o'clock P.M. on said date; that thereafter at approximately 10:20 o'clock P.M. on said [date] . . . after the said Thelma Able Bledsoe died, the said Bynus W. Bledsoe shot and took his own life on said date after the said Thelma Able Bledsoe died; the said Thelma Able Bledsoe at all times mentioned herein pre-deceased the said Bynus W. Bledsoe."

Appellee filed demurrer to the complaint for insuffi-

---

1. This cause was transferred from the Appellate Court pursuant to Burns' §4-215, 1946 Replacement, the Appellate Court's opinion appearing in 133 N. E. 2d 887.

2. See: *Natl. City Bank, etc.* v. *Bledsoe et al.* (1955), 125 Ind. App. 430, 126 N. E. 2d 490.

cient facts which was sustained and on appellant's failure to plead over, judgment was rendered for appellee on said demurrer.

Appellee's contentions are set forth in the following excerpts from the memorandum supporting appellee's demurrer, 133 N. E. 2d 887, 888, as follows:

"1. Said amended complaint upon its face shows that at the time of the death of the said Thelma Able Bledsoe, her husband, Bynus Bledsoe and she were the owners of said real estate by entireties, being the real estate involved in said amended complaint. Said amended complaint shows on its face, as alleged in Rhetorical Paragraph Nine (9) of said amended complaint, that the husband killed his wife, Thelma Able Bledsoe, and that he, the said Husband, Bynus W. Bledsoe, survived her and then killed himself.

"2. The complaint fails to allege or show on the face thereof, that the said Bynus W. Bledsoe was legally convicted of intentionally causing the death of his wife, Thelma Able Bledsoe, or of aiding or abetting therein, and therefore he could not be considered a constructive trustee of any of the property, real or personal, acquired by him from the deceased or her estate because of such death, for the sole use and benefit of those persons legally entitled thereto other than such guilty person. Therefore, under the law of the State of Indiana, the said Bynus W. Bledsoe, who survived his wife, Thelma Able Bledsoe, became the sole and exclusive owner of said real estate of said Thelma Able Bledsoe, and therefore her personal representative National City Bank of Evansville, Indiana, and her heirs at law or legatees under her will took no interest or title in said real estate involved in said complaint. That the said heirs of the said Bynus Bledsoe, George S. Bledsoe and Robert W. Bledsoe, took all of said interest in said real estate by law, subject to sale by the personal representative of the Estate of Bynus Bledsoe to pay the debts of the estate of said Bynus Bledsoe.

"3. The law of Indiana does not demand a forfeiture of a husband's rights as surviving spouse in entireties real estate even though he killed his wife."

An examination of the authorities of this state fails to reveal a reported decision upon the particular question before us on this appeal.

In other jurisdictions the question involved has arisen and it appears the courts are very much divided upon the result reached. The annotation in 32 A. L. R. 2d 1101, §2, makes reference to the divergent opinions of the various courts, as follows, to-wit:

"As to tenants by the entireties, the courts are divided in their opinions regarding the right of the guilty tenant to take the whole interest or a partial interest in the property where the marriage relationship is unnaturally dissolved by a felonious killing. Numerically speaking, the courts are equally divided, some holding that the killing does not deprive the survivor of any interest, and some holding that he should acquire only a one-half interest and not be allowed to make an actual gain at the expense of his crime. The difficulty of the situation lies in the fact that, under the common-law fiction of holding by the entireties, each tenant held the entire estate from the time of the original investiture and for that reason acquired no additional interest on the death of his fellow tenant, from natural causes or otherwise. Some courts, however, are too much concerned with equitable principles prohibiting a person from profiting from his own wrong to be guided in their decisions entirely by the rules of strict survivorship. As a consequence, these courts have attempted to reach some solution halfway between allowing the killer to take everything and allowing him to take only a partial interest in the estate.

"One solution which has been used extensively by the courts is the constructive trust. By requiring property to be held under this type of restrictive interest the courts are enabled to let the survivor

or his representatives take in accordance with the rules of common law but at the same time not have complete enjoyment of the property as a free and unencumbered owner. The beneficiaries of the trust are most often the representatives of the deceased spouse. Even here, however, the courts are still divided as to whether the entire interest should pass to the trust or only a one-half interest, the remaining half descending immediately to the deceased's representatives."

Professor Scott in his work on trusts[3] states that at least five different results have been reached by the courts when husband and wife hold property as tenants by the entirety or as joint tenants and one of them murders the other and thereby acquires the whole of the property by survivorship. These five separate rules are:

(1) The murderer is entitled to take and keep all the property.[a]

(2) The murderer holds the property on constructive trust, but only for the value of the use of one-half of the property, for the victim's lifetime expectancy.[b]

(3) The murderer is a constructive trustee for the victim's estate of the whole of the property, subject to a life estate in the murderer in the whole of the property.[c]

(4) The murderer is a constructive trustee of the whole of the property for the victim's estate.[d]

(5) The murderer is a constructive trustee for the victim's estate in one-half of the property.[e]

---

3. Scott on Trusts, 2d Ed., Vol. 4, §493.2, pp. 3204-3207. a. *Beddingfield* v. *Estill & Newman* (1906), 118 Tenn. 39, 100 S. W. 108, 9 L. R. A. (N. S.) 640; *Wyckoff* v. *Clark et al.* (1951), 77 D. & C. 249 (Pa.); b. *Sherman* v. *Weber* (1933), 113 N. J. Eq. 451, 167 Atl. 517; c. *Bryant* v. *Bryant* (1927), 193 N. C. 372, 137 S. E. 188, 51 A. L. R. 1100; d. *Van Alstyne* v. *Tuffy* (1918), 103 Misc. 455, 169 N. Y. S. 173; e. *Ashwood* v. *Patterson* (Fla. 1951), 49 So. 2d 848; *Bradley* v. *Fox* (1955), 7 Ill. 2d 106, 129 N. E. 2d 699, 28 A. L. R. 2d 662, 32 A. L. R. 2d 1099, 39 A. L. R. 2d 477; *Barnett, Admr.* v. *Couey, Admr.* (1930), 224 Mo. App. 913, 27 S. W. 2d 757.

It is obvious at the outset, that the Indiana statute[4] providing that one *convicted* of intentionally causing the death of another becomes a constructive trustee of property acquired from the decedent, is of no application to the case at bar. Here the alleged murderer not only committed suicide before any attempt was or could be made to prosecute him, but the property here involved could not have been acquired by the husband by inheritance.

We are, therefore, called upon to decide whether, in the absence of statute, one who murders his spouse[5] and thus survives such spouse, thereupon becomes the sole individual owner of land previously held by them as tenants by the entirety, so that upon his suicide it passes to his estate. We are told by appellee this conclusion is necessary because without the above statute, under the law of Indiana, the survivor in a tenancy by the entirety becomes the sole and exclusive owner, regardless of whether it took a murder to accomplish it.

While many of the common law disabilities of married women have been abolished and are no longer recognized, our law still adheres to the common law fiction that husband and wife are one person, so far as such concept pertains to real estate held by them as tenants by the entirety. As stated by Blackstone: "They could not take by moieties, but were each seized of the whole."[6]

Nevertheless the existence of a tenancy by the en-

4. Acts of 1953, ch. 112, §212, p. 295, being Burns' §6-212, 1953 Replacement.

5. This allegation of appellants' complaint was admitted for our purposes here by appellees' demurrer to the complaint. See: Flanagan's Indiana Pleading & Procedure, §146.

6. 2 Blackstone's Comm. §182; *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N. E. 2d 514, 111 N. E. 2d 90; *Sharpe* v. *Baker* (1912), 51 Ind. App. 547, 553, 96 N. E. 627, 99 N. E. 44.

tirety depends upon the continuation of the marriage relation, and decisions of this state, prior to the passage of any statute bearing thereon, recognized that a divorce of the marriage partners severed the estate and changed it into a tenancy in common or joint tenancy.[7] It has also been held that an estate by entireties is terminated at least in equity upon the conveyance by the husband individually to his wife of the real estate held by him as a tenant by the entireties.[8]

Is there any valid reason why the well-settled equitable principle that "equity will not permit a person to profit by his own wrong at the expense of another," should not be applicable to an estate by entireties terminated by murder? There is no doubt the murderer in reality has profited from illegally causing the death of the victim spouse, as he has become the sole and exclusive owner of the fee, which he could thereupon alienate or dispose of as he alone saw fit. And according to the Federal Estate Tax Laws he has profited, for on the death of one spouse, the same must be reported for federal tax purposes. And while according to the strict common law fiction, the murderer may not have profited or benefited, on the theory that he was, during the marriage, the owner *per tout* of the property, equity looks to the substance and not the form, and should not condone by a common law fiction the fact that the wrongdoer has actually benefited by his own wrongful conduct.

---

7. See: *Maitlen* v. *Barley* (1910), 174 Ind. 620, 92 N. E. 738; *Enyeart* v. *Kepler et al.* (1889), 118 Ind. 34, 36, 20 N. E. 539, 10 Am. St. Rep. 94.

By statute in 1949, it was provided *inter alia* that upon divorce tenancies by the entirety not dealt with in the court's decree became tenancies in common. Acts of 1949, ch. 120, §3, p. 310, being Burns' Ind. Statutes, §3-1218, 1955 Cum. Supp.

8. *Enyeart* v. *Kepler* (1889), *supra.*

As stated in 28 Notre Dame Lawyer at page 287:

"The principal objection to this strict legal approach to the problem is that the courts which apply it ignore the fact that the survivor does derive some benefit by his crime. In the joint tenancy situations the survivor eliminates the possibility that the decedent may outlive him and thus take all of the property held under such tenancy. It also eliminates the possibility that the decedent may withdraw some or all of the funds held in a joint bank account. If the interest is a tenancy by the entirety, the survivor gains even more, for he avoids the requirement that his co-tenant must join in order to convey the property."

In some cases the courts have permitted the murderer to take and keep the additional interest he has acquired on the death of the deceased because they thought it would be a violation of statutes making a different distribution and thereby depriving him of an interest in property. These courts have failed to see that in order to deprive the murderer of the property interest, it is not necessary to make an exception to the statute; all that is necessary is to apply the well-settled equitable principle upon which a constructive trust is imposed upon one who acquires property through his own wrong.

We therefore conclude the murderer or his estate should not in equity be permitted to take and keep the entire interest in fee in the property which he has thus acquired by his wrongful act.

The remaining four alternative rules heretofore treated as recognized by the courts all consider the murderer to be a constructive trustee and differ only in the extent of the property over which he becomes a constructive trustee.

In determining which of these alternatives should be the law of this state, it is significant to reflect that where the operation of a tenancy by entireties has been thwarted by a divorce or otherwise, the common law of the state divides the property equally between the original owners. (See this opinion, *supra,* 237 Ind. 130, 138, 144 N. E. 2d 713, 714.) There is no reason why the same division should not be made where a tenancy by entireties is dissolved by murder.

We accordingly conclude that the fifth rule, to-wit: that the murderer becomes a constructive trustee for the victim's estate in one-half of the property is most nearly compatible with common law and equitable principles of this state and should be followed in the case at bar. The rule has been followed by decisions of Missouri,[9] Illinois,[10] Florida,[11] and Kentucky,[12] and we commend the reasoning of the Missouri case of *Barnett, Admr.* v. *Couey, Admr.* (1930), 224 Mo. App. 913, 27 S. W. 2d 757, 760, which is to the following effect:

> "Conceding, but not deciding, that full legal title may pass to the husband by the fact of survivorship, yet, because of the unconscionable mode of its acquisition, a court of equity, as here, should and will treat him as a constructive trustee. In any event, with a view of rendering equity and justice and preventing one securing an advantage, benefit, or property right through his own iniquitous act, an accounting should be had of one-half of the

---

9. *Barnett, Admr.* v. *Couey, Admr.* (1930), *supra,* 224 Mo. App. 913, 27 S. W. 2d 757; *State ex rel. Roll* v. *Ellison* (1921), 290 Mo. 28, 233 S. W. 1065.

10. *Bradley* v. *Fox* (1955), *supra,* 7 Ill. 2d 106, 129 N. E. 2d 699.

11. *Ashwood* v. *Patterson* (1951), *supra,* Fla., 49 So. 2d 848.

12. *Cowan* v. *Pleasant* (1954), Ky., 263 S. W. 2d 494, 32 A. L. R. 2d 1099.

value of the property, for which the plaintiff here petitioned. We think it follows where the husband by his willful, felonious act dissolves the marital relationship and as a consequence there is a severance of the estate by the entirety such property may well be treated as held by tenants in common. Dissolution of the marriage status by operation of law, that is to say, divorce, would vest in each an undivided one-half interest as tenants in common. [State ex rel. Roll v. Ellison, supra, 290 Mo. 28, 233 S. W. 1065.] Clearly then the rights of the husband, because of an act contrary to law and not by operation thereof, should rise no higher."

The fact that the Indiana Legislature has passed a statute providing that the slayer shall not take the beneficial interest of property from the decedent if he is convicted of intentionally causing such death (but shall be a constructive trustee thereof) does not necessarily mean that he shall take the beneficial interest if he is not convicted. If under the prevailing rules of equity apart from the statute,[13] the murderer is precluded from taking the property whether or not he has been convicted of the murder, and if the statute is not intended to supersede but merely to supplement the prevailing equity rule,[14] the murderer should be precluded from taking the property if it is established in the civil proceeding that he committed the murder even though he has not been convicted in a criminal proceeding; either because he committed suicide before he was tried, or because the criminal proceeding has not been completed, or even

---

13. The Indiana statute imposing a constructive trust upon one convicted of intentionally causing death of another specifically recognizes the pre-existence of equity rules to such effect by stating: "A person . . . convicted . . . shall, *in accordance with the rules of equity*, become a constructive trustee . . . ." See: Acts of 1953, *supra*, ch. 112, §212, p. 295, being Burns' §6-212, 1953 Replacement.

14. *Ibid.*

because he has been acquitted in the criminal proceeding.[15]

We do not believe the rule we have enunciated imposes a forfeiture for crime in violation of the U. S. or Indiana Constitutions. (U. S. Const. Amend. 14; Const. Ind. Art. 1, §30, Art. 1, §12.) In fact, the murderer is not deprived of any property which he obtained in any other way than through the murder; he is merely prevented from enriching himself by acquiring property through the murder. Many states, including Indiana, have provided by statute that the murderer shall not inherit from his victim. These statutes would be unconstitutional if they imposed a forfeiture of property as a penalty for the murder. The statutes, however, have uniformly been upheld, since they merely prevent the murderer from profiting by his act.[16]

The Indiana cases of *In re Mertes Estate* (1914), 181 Ind. 478, 104 N. E. 753, in which a convicted wife who had killed her husband was held entitled to recover her $500.00 statutory allowance; and *Bruns* v. *Cope* (1914), 182 Ind. 289, 105 N. E. 471, in which a husband was allowed to inherit from his deceased wife although it was alleged the husband aided the wife in committing suicide by his words and acts, were cases which primarily involved a construc-

15. The success of a criminal prosecution cannot be considered a necessary prerequisite to a showing in a civil proceeding, such as the one before us, that the criminal act has occurred. This is necessarily true because of the dissimilarities of criminal and civil actions including different standards of proof required, i.e., proof beyond a reasonable doubt as distinguished from proof by a mere preponderance of the evidence. Also, the result of a criminal prosecution could not be res judicata so as to bind parties to a civil action who were not parties to the criminal proceeding.

See also: Scott on Trusts, 2d Ed., Vol. 4, §492.4, pp. 3191-3193.

16. See: Scott on Trusts, 2d Ed., Vol. 4, §492, pp. 3181, 3182.

tion of the statutes of 1907[17] forbidding taking by devise or descent after a conviction for causing the death of the decedent spouse. Similarly, the case of *Debus, Admr.* v. *Cook* (1926), 198 Ind. 675, 154 N. E. 484, which held the wife's estate could not recover a second childless wife's interest as a survivor of her husband, when she was murdered by her husband, and accordingly predeceased him, is similarly distinguishable on the facts. However, in so far as such decisions may be construed as being in conflict with the opinion in the case at bar, they are disapproved.

Appellee has made the procedural contention that appellants' petition to transfer this cause from the Appellate Court to this Court should be dismissed as it was not filed within 20 days after the denial of the petition for rehearing in the Appellate Court as required by Rule 2-23 of this Court. However, it appears that the notice sent to appellant by the Clerk of this court erroneously stated the rehearing was denied on May 14, when in truth and fact it was denied on May 11. The record thus shows that an officer of this court through an affirmative act commited an error for which appellant can not in fairness be held chargeable. Appellants' petition to transfer having been filed within 20 days after May 14, we conclude it was timely filed.

As appellants' complaint stated a good cause of action for equitable relief as against appellees' demurrer for insufficient facts, it is our conclusion the trial court erred in sustaining the demurrer to the complaint.

Judgment reversed.

Arterburn, C. J., and Achor, Bobbitt and Emmert, JJ., concur.

NOTE.—Reported in 144 N. E. 2d 710.

---

17. Acts of 1907, ch. 95, §1, p. 136.