Daniel L. FUSTON, Zelma A. Fuston, Defendants-Appellants,

v.

NATIONAL MUTUAL INSURANCE CO., Plaintiff-Appellee.

No. 1-1281A370.

Court of Appeals of Indiana, First District.

Oct. 19, 1982.

Rehearing Denied Nov. 15, 1982.

Lawrence D. Giddings, Peyton & Giddings, Lebanon, for defendants-appellants.

Jerome L. Withered, Robert C. Reiling, Jr., Dickson, Reiling, Teder & Withered, Lafayette, for plaintiff-appellee.

NEAL, Judge.

Plaintiff-appellee, National Mutual Insurance Co. (National), filed an action for declaratory judgment to determine coverage for fire loss on a Homeowners Insurance Policy issued to the defendants-appellants, Daniel L. Fuston and Zelma A. Fuston (Fustons). National claimed that Fustons had intentionally caused the fire and breached other policy provisions as well. Fustons filed a counterclaim for policy coverage. From an adverse jury verdict and judgment on both their counterclaim and National's declaratory judgment action, Fustons appeal.

We reverse.

## STATEMENT OF THE FACTS

Fustons, husband and wife, owned a residence as tenants by the entireties. Their residence was destroyed by fire on September 8, 1979. A $38,000 homeowners insurance policy issued by National named both Daniel and Zelma as insureds. National denied coverage on the basis that Daniel intentionally caused the fire to be set and presented evidence to that effect; however, its brief points to no evidence in the record indicating complicity on the part of Zelma. Both Fustons submitted a proof of loss which National claims contains false statements.[1]

1. The relevant exclusion and condition are as follows:

"NEGLECT, meaning neglect of the insured to use all reasonable means to save and

The trial court refused to give and read to the jury Fustons' tendered Instruction Number 3 which reads as follows:

"If you find that one of the defendants committed an act which would void the terms of the insurance policy but that the other defendant was innocent of any such act, you should return a verdict against the one defendant and a verdict for the other defendant."

Instead the court gave and read to the jury National's Instruction Number 5, which reads as follows:

"You are instructed that in this state, a husband and wife who own property jointly are deemed to be owners of the whole of the property whose interests are inseparable. In such a case where one spouse commits acts justifying the denial of coverage by the insurance company on a fire loss, the other spouse may not recover on the insurance policy. Therefore, if you find from a preponderance from the evidence that one or both of the defendants committed acts justifying the denial of insurance coverage for this fire loss, then you should render a verdict for the plaintiff."

No other instruction was given stating the issue raised by Fuston's Instruction Number 3.

## ISSUE

■ The sole issue on appeal is whether the trial court erred in refusing to give Fuston's Instruction Number 3. Otherwise stated, the question is whether the separate act of one spouse of intentionally setting fire to property held by the entireties, can foreclose recovery by the innocent spouse on a contract of insurance.

## DISCUSSION AND DECISION

The question was decided adversely to National in *American Economy Insurance Company v. Liggett,* (1981) Ind.App., 426

N.E.2d 136, handed down after the conclusion of this case. The facts in that case are similar to the facts here except that in *Liggett* the guilty husband perished in the fire. The *Liggett* court permitted full recovery for the fire loss by the innocent surviving tenant by the entirety, the widow.

*Liggett* proceeded in part, both in the majority opinion, and in the concurring opinion, on the construction of the policy, which contained provisions similar to those involved here. After reciting the usual rule of construction that an ambiguous policy should be construed against the insurer and in favor of the insured, the court concluded that the policy should be construed to permit the innocent spouse to recover. In the fraud exclusion, the word "insured" was limited to the guilty spouse in order to protect the reasonable expectation of the innocent insured that coverage would exist under such circumstances. The opinion noted that the company could have but did not make an express exclusion.

*Liggett* is not totally dispositive here, for that court's opinion suggested that "... a different rule may need to be fashioned where the guilty spouse survives." *Id.* at 144. In a concurring opinion Judge Staton said that, "[t]he amount of damages recoverable by the innocent spouse if the wrongdoing spouse survives the incendiary act may need to be limited to prevent the wrongdoer from benefitting from the wrongful act." *Id.* at 148. In its answer brief National's principal argument is that *Liggett* was erroneously decided and that we should ignore it.

No good purpose would be served by burdening this opinion with an analysis of the factors discussed in *Liggett,* for that opinion contains an exhaustive discussion of the problem. We agree with the results of that case and the rationale expressed therein. We shall limit our discussion to the measure

preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

\*    \*    \*    \*    \*    \*

"CONCEALMENT OR FRAUD. We do not provide coverage for any INSURED who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."

of recovery where the guilty spouse survives.

The *Liggett* court stated in dicta,

"As a matter of public policy, we deny any recovery of insurance proceeds to a beneficiary of a life insurance policy who has murdered the insured. The law does not permit the guilty party to profit from his wrongdoing. There is no clause or policy language which purports to deny insurance benefits to the murderer. It is pure and simple a matter of fundamental justice and equity expressed as the public policy of the law. Similarly, the arsonist whose business is failing and who cannot sell his property must not be permitted, as a matter of public policy, to find a way out of his dilemma by setting a fire.

It may also be appropriate to prevent the depressed, jealous, murderous or even insane spouse from profiting by setting a fire by denying that spouse any recovery from an insurance carrier.

This public policy is easily vindicated by denying any recovery to the living guilty spouse and permitting the innocent spouse recovery of one-half of the insured loss within policy limits. Where there is some prospect that the guilty party might benefit, even indirectly, a careful factual analysis can be made by the trial court to determine whether that prospect exists and to protect against it. *Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange* (1968), 267 Cal.App.2d 381, 73 Cal. Rptr. 182; *Hildebrand v. Holyoke Mut. Fire Ins. Co.* (Me.1978), 386 A.2d 329." (Footnote omitted.)

426 N.E.2d at 140.

It is said that the impediment to permitting an innocent spouse to recover is the very nature of a tenancy by the entireties as the parties own the property *per tout et non per my*. While this is not a suit dividing the real estate (the parties are alive and the real estate still exists), under Indiana law crops or proceeds from land held by the entireties are impressed with characteristics of a tenancy by the entireties. This rule is applicable only so long as the proceeds remain intact. *Whitlock v. Public Service*

*Company of Indiana, Inc.,* (1959) 239 Ind. 680, 159 N.E.2d 280.

■ However, a tenancy by the entireties is not immutable. The parties' actions may result in a termination of the estate whether by divorce or a conveyance of one spouse's interest to the other spouse. *See National City Bank of Evansville v. Bledsoe,* (1957) 237 Ind. 130, 144 N.E.2d 710; *Liggett, supra.* The same is true of proceeds. In *Whitlock* Husband and Wife received an appraiser's award as a result of eminent domain proceedings concerning realty they owned as tenants by the entireties. The *Whitlock* court found that although these proceeds were entireties property when awarded, the parties disposed of the proceeds in such a way that they could no longer be traced and identified as one separate fund. Such actions terminated the tenancy by entireties as to the proceeds.

■ The case of *National City Bank of Evansville* found that murder terminated a tenancy by the entireties. There, the husband murdered his wife, a co-tenant by the entireties, and then committed suicide. In a suit by the wife's personal representative against the personal representative of the husband, the court permitted the recovery of one half of the entireties property for the benefit of the wife's creditors and heirs. The court acknowledged Indiana's adherence to the common law fiction that a husband and wife are one person for the purpose of owning real estate as tenants by the entireties. The court stated that generally the survivor becomes the sole and exclusive owner of entireties property. Yet, continued the court, equity will not permit a person to profit by his own wrong. Therefore the law impresses a constructive trust on one half of the real estate. The court concluded that the felonious act severed and dissolved the tenancy by the entireties and reflected that "where the operation of a tenancy by entireties has been thwarted by a divorce or otherwise, the common law of the state divides the property equally between the original owners." 237 Ind. at 140, 144 N.E.2d 710. We read *National City Bank of Evansville* to stand for the

proposition that a tenancy by the entireties, in equity, can be terminated by a felonious act and converted into a tenancy in common. We perceive no reason why such a rule should not apply with equal force to insurance proceeds of entireties property.

This result was reached in an arson case similar to the case at bar, *Steigler v. Insurance Company of North America*, (1978) Del., 384 A.2d 398, a case in which both spouses survived the husband's arson. The *Steigler* court noted that if the parties had been unmarried tenants in common, the innocent party would be entitled to his or her share of the proceeds. The court concluded that barring recovery to a wife because she is a wife would be contrary to public policy and could also present equal protection problems.

In spite of the cases of some years standing concerning the possibility that one of the co-insureds may commit arson, National has done nothing to provide a plainly worded exclusion to cover that eventuality. If the innocent spouse were denied any recovery, one could visualize situations in which one spouse, the sole owner of a piece of property, might convert the title to tenancy by the entireties thinking himself insured and later suffer a devastating loss due to the arson of the other spouse. By permitting the innocent spouse to recover one half, we are attempting to reduce his loss while denying any benefit to the guilty spouse. Furthermore we are of the opinion that under the rule enunciated in *Liggett*, the trial court could determine on a case by case basis whether the guilty spouse will benefit and take measures to prevent it. We read *Liggett* and the cases upon which it was decided to mean that an "innocent spouse" is one who is innocent of any collusion. Any agreement between the spouses regarding the destruction of the property or sharing of the proceeds of the insurance will defeat recovery altogether.

Therefore, we are of the opinion that the trial court committed reversible error in refusing to give Fuston's tendered Instruction Number 3. This cause is reversed and the trial court is ordered to grant a new trial.

Reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.