In the Matter of the ESTATE OF James H. GRUND, Deceased, James David Grund and Jama Ann Lidral, Appellants–Plaintiffs

v.

Sue Ann GRUND, a/k/a Susan Ann Grund, and the Peru Trust Company as Special Administrator of the Estate of James H. Grund, Appellee.

No. 52A02–9311–CV–00629.

Court of Appeals of Indiana, Second District.

March 27, 1995.

Patrick J. Roberts, Peru, for appellants.

Kent Stanley, Peru, guardian ad litem, for Tanelle Grund.

Janet Mills Jackson, Peru, guardian ad litem, for Jacob Grund.

Thomas A. Keith, Peru, for the Peru Trust Co. as Sp. Adm'r. of the Estate of James H. Grund.

Donald G. Fern, Peru, trustee under last will and testament of James Grund and trust agreement of James Grund.

Stephen Bower, Cohen & Thiros, Merrillville, for Susan Grund.

## OPINION

SULLIVAN, Judge.

The estate of James H. Grund (Estate) appeals from a judgment entered upon its complaint to impose a constructive trust with respect to certain entireties real estate.

The case requires us to determine what portion of tenancy by the entirety property, if any, a wife is entitled to after she is

charged with, and thereafter convicted of, murdering her husband.[1]

James H. Grund (James) and Sue Ann Grund (Susan) were married at the time of James's death on August 3, 1992. They owned real estate in Miami County, Indiana (the Temple Hills property) as tenants by the entirety. On November 4, 1992, Susan was arrested and charged with murdering James.[2] Approximately one month later, the Estate filed a Complaint For Imposition of Constructive Trusts, alleging that Susan murdered James, and that whatever interest she held by the entirety with him should be placed in constructive trust pursuant to I.C. 29–1–2–12.1 (Burns Code Ed.Repl.1989).

On January 5, 1993, Susan transferred the Temple Hills property via quitclaim deed to Charles H. Scruggs (Scruggs), her attorney.[3] Three days later, Estate notified Scruggs of its intent to have Susan declared a constructive trustee of the Temple Hills property. The parties then requested that the trial court determine the shares to which Susan

and Estate were entitled should Susan be found guilty of murdering James. The court found that Susan could take one-half of the property as an owner, and that James owned the other half to be administered by his estate. The trial court further determined that Susan could not inherit from James. Thereafter, the Estate filed a document entitled Objections to Release of Funds, along with its Motion to Correct Errors. On July 29, 1993, the trial court entered an amended judgment, concluding that Susan, or her successor in interest, owned one-half of the tenancy by the entirety real estate, and that the remaining one-half was to be held by the Peru Trust Company (the personal representative of the Estate) in a constructive trust pending further court order.[4] The probate court ordered the Temple Hills property sold. The net proceeds are now in the possession of the Peru Trust Company for distribution pending the outcome of this appeal.

The Estate contends that both common law and I.C. 29–1–2–12.1 [5] preclude Susan

1. The Appellee, Susan Grund, has also requested appellate attorney fees, claiming that the Estate's argument is wholly devoid of merit.

2. This appeal is based upon the supposition that Susan has been adjudged guilty of murdering James. The record reveals only that Susan's criminal trial was pending in the Miami County Circuit Court at the time the parties presented us with briefed arguments. However, at oral argument, Susan did not dispute that she was in fact convicted by a jury. The record does not disclose whether that case has reached a final disposition.

3. The record reveals that the transfer of Susan's interest in the property was in payment of her defense attorney fees.

4. The trial court's conclusions are as follows:

"1. The decision of *National City Bank of Evansville v. Bledsoe* (1957), 237 Ind. 130, 144 N.E.2d 710, is controlling. Under the authority of *Bledsoe* the court concludes that when a wife is found responsible for killing her spouse she may not take the entire tenants by the entireties real estate. That regardless of the outcome of the determination of the murder charge against Susan, Susan is declared to be the owner of one-half of the tenants by entirety real estate. The other one-half should be held in a constructive trust until the final legal determination of whether Susan killed her husband.

2. A convicted spouse cannot take, as an owner, the decedent's interest in tenants-by-the-entireties real estate.

3. A convicted spouse cannot take by inheritance from decedent.

4. The Court concludes that since the personal representative in this matter has possession of all such property, said personal representative should retain same; one-half of the net proceeds in his possession for Susan A. Grund and/or her successor in interest until further order of the Court, and the remaining one-half should be held by the personal representative in a constructive trust pending the legal determination of whether Susan killed her husband." Record at 49–50.

5. I.C. 29–1–2–12.1 reads as follows:
"(a) A person is a constructive trustee of any property that is acquired by him or that he is otherwise entitled to receive as a result of a decedent's death, if that person has been found guilty, or guilty but mentally ill, of murder, causing suicide, or voluntary manslaughter, because of the decedent's death. A judgment of conviction is conclusive in a subsequent civil action to have the person declared a constructive trustee.
(b) A civil action may be initiated to have a person declared a constructive trustee of property that is acquired by him, or that he is otherwise entitled to receive, as a result of a decedent's death, if:
(1) The person has been charged with murder, causing suicide, or voluntary manslaughter, because of the decedent's death; and

from "obtaining or acquiring" any interest in realty she owned as tenants by the entirety with James. Brief of Appellant at 6.[6] The Estate contends that Susan holds *all* such property as a constructive trustee pending a finding of guilt. Susan counters that vesting the entire estate in a constructive trust pending further order requires her to forfeit property to which she is entitled, arguing that *National City Bank of Evansville v. Bledsoe* (1957) 237 Ind. 130, 144 N.E.2d 710, requires us to affirm the trial court's determinations.

In *Bledsoe,* a married couple held property as tenants by the entirety. The husband killed his wife and then committed suicide. The wife's estate then sued the husband's estate to determine ownership of the property. Our Supreme Court first recognized that the statute then in effect clearly would have prevented the husband from taking the one-half to be held in constructive trust had he been convicted of murdering his wife.[7] However, the husband's suicide made it impossible to apply the statute. The court turned to the common law, noting that other jurisdictions had taken five different approaches in resolving such situations.[8] The court ultimately concluded that the better-reasoned approach was one holding that the murderer becomes a constructive trustee for the victim's estate in one-half of the property.[9] Thus, the entire estate did not vest in the husband. Instead, the court determined that he held his decedent wife's one-half interest in constructive trust for the benefit of her estate.

Estate contends here that *Bledsoe* merely stands for the proposition that the common law requires imposition of a constructive trust upon the decedent's one-half interest in

---

(2) The person has been found not responsible by reason of insanity at the time of the crime.
If a civil action is initiated under this subsection, the court shall declare that the person is a constructive trustee of the property if by a preponderance of the evidence it is determined that the person killed or caused the suicide of the decedent.
  (c) If a constructive trust is established under this section, the property that is subject to the trust may be used only to benefit those persons, other than the constructive trustee, legally entitled to the property, determined as if the constructive trustee had died immediately before the decedent. However, if any property that the constructive trustee acquired as a result of the decedent's death has been sold to an innocent purchaser for value who acted in good faith, that property is no longer subject to the constructive trust, but the property received from the purchaser under the transaction becomes subject to the constructive trust."

6. With regard to Susan's interest in the real estate prior to the death of James and whether that interest survives or is "retained" is a facet of the respective arguments and is hereinafter discussed. *Infra* at 7, *et seq.*

7. The statute, Ind.Ann.Code § 6–212 (Burns Repl.1953), prohibited a murderer from taking beneficial interest in tenancy by the entirety property from the decedent if convicted of the alleged crime. *See Bledsoe, supra,* 144 N.E.2d at 713.

8. Those five rules were identified as follows:
  "(1) The murderer is entitled to take and keep all the property.

(2) The murderer holds the property on constructive trust, but only for the value of the use of one-half of the property for the victim's lifetime expectancy.
(3) The murderer is a constructive trustee for the victim's estate of the whole of the property, subject to a life estate in the murderer in the whole of the property.
(4) The murderer is a constructive trustee of the whole of the property for the victim's estate.
(5) The murderer is a constructive trustee for the victim's estate in one-half of the property."
*Bledsoe, supra,* 144 N.E.2d at 713 (discussing 4 Austin Wakeman Scott, Scott on Trusts § 493.2, at 3204–07 (2d ed.) (footnotes and citations omitted).
In the case before us, the trial court applied Rule (5).

9. The *Bledsoe* court then determined that the murderer would also be precluded from taking the property if it was established in a later civil proceeding that he committed the murder even though he had not been convicted in a criminal proceeding. 144 N.E.2d at 715. I.C. 29–1–2–12.1(b) codifies that determination:

  "If a civil action is initiated under this subsection, the court shall declare that the person is a constructive trustee of the property if by a preponderance of the evidence it is determined that the person killed or caused the suicide of the decedent."
Accordingly, even without a criminal conviction, Susan could be found guilty of murder by a preponderance of the evidence in a later civil proceeding for purposes of imposing a constructive trust.

the real estate immediately upon a co-tenant's death. Separate and apart from that remedy, Estate argues that because I.C. 29–1–2–12.1 focuses upon a criminal conviction, there is a "gap of time between the death and the conviction" where entitlement to the proceeds or a portion thereof hangs "in limbo". Brief of Appellant at 9. Estate maintains that the whole estate vests in Susan, superficially, at the time of death, and she holds bare legal title for the benefit of James's heirs until further court order. Once found guilty, the Estate argues that Susan is a constructive trustee of the whole estate retroactive to the time of James's death. Accordingly, the Estate claims that the trial court should have frozen "all funds or proceeds of any disposition of the realty" until Susan was finally adjudicated guilty and the constructive trust issue resolved. Brief of Appellant at 9. Thus, the Estate concludes that the trial court erred when it failed to restrain Susan and her criminal defense attorney from further clouding title to the Temple Hills property.

The Estate further asserts that such a result does not require Susan to forfeit any property because she never acquired any property to forfeit. Crucial to this argument is the contention that neither James nor Susan acquired a vested interest in the Temple Hills property when they took title as tenants by the entirety. Instead, the Estate asserts that the survivor of the two owned the property. Because I.C. 29–1–2–12.1 excludes a murdering spouse from being recognized as the survivor, the Estate insists the property vested exclusively in the Estate, retroactive to the moment of death, if Susan is convicted.

The critical question is this: what did Susan "acquire" or become "otherwise entitled to receive" as a result of James's death? This question is further confounded by the legal fictions inherent in tenancy by the entirety property. In Indiana, the single legal entity created by the fiction of unity of the spouses holds or "owns" tenancy by the entirety property. *Rodenbeck v. Marathon Petroleum Co.* (1990) N.D.Ind., 742 F.Supp. 1448; *Bayes v. Isenberg* (1981) 1st Dist. Ind. App., 429 N.E.2d 654; *State of Indiana, Indiana Department of State Revenue, Inheritance Tax Division v. Union Bank & Trust Co.,* (1978) 1st Dist., 177 Ind.App. 632, 380 N.E.2d 1279. Older cases held that both spouses were seized of the whole. *E.g., Baker v. Cailor* (1933) 206 Ind. 440, 186 N.E. 769. Thus, neither spouse alone may do anything to destroy the tenancy, including transferring an interest without the other spouse's consent or ousting the other from possession. *See, e.g., Beneficial Mortgage Co. of Indiana v. Powers* (1990) 1st Dist. Ind.App., 550 N.E.2d 793, *trans. denied* (mortgage was invalid absent any proof of wife's authorization in a case in which a husband forged wife's name when he mortgaged entirety property as security for a loan); *Thornburg v. Wiggins* (1893) 135 Ind. 178, 34 N.E. 999 (contract of sale invalid when only husband's signature appeared on contract with third party to sell entirety property). Absent consent of one of the spouses, only a severance of the marital relationship may destroy the tenancy by the entirety.

The court in *Bledsoe* recognized that divorce severs a tenancy by the entirety. Analogizing divorce, the court then determined that all tenancy by the entirety property is severed when one tenant murders the other tenant, writing that "[t]here is no reason why the same division should not be made where a tenancy by entireties is dissolved by murder." 144 N.E.2d at 715.[10] *Bledsoe* then determined that a murderer should not be permitted to take and keep the entire interest in the property because of his crime. Our Supreme Court chose to establish a constructive trust only over the victim's one-half of the property, allowing the murderer to take the other half.[11] Thus, the

---

10. We find the divorce analogy compelling in a case like this one. Granted, while acts that "cause" a divorce are not so egregious as murder, the result is the same; one spouse's action may have unilaterally and wrongly created the irretrievable breakdown of the marital relationship. Even an abusive or unfaithful spouse who is responsible for the breakdown of the marriage is nevertheless entitled to a one-half interest in entireties property under Indiana law.

11. The *Bledsoe* court's determination that the husband held only one-half of the estate in constructive trust is significant because it clearly

husband never "profited" from his crime because his estate did not acquire any *additional* property. His heirs received only one-half of the estate, that portion to which the Court recognized he was inherently entitled. The only property he would have "acquired" had he later been found guilty of intentionally killing his wife would have been the one-half the court initially ordered held in constructive trust.

■ The same is true here. While recognizing that I.C. 29–1–2–12.1 is not limited to inheritance situations,[12] we make clear that it applies only to property a murdering spouse "acquires" as a result of the death. Should we accept the Estate's argument that I.C. 29–1–2–12.1 requires all proceeds to be held in constructive trust pending proof that one spouse is responsible for the other's murder,

we would be effectively challenging our Supreme Court's determination in *Bledsoe* that the murderer is an undivided one-half owner at the time of the estate's severance. We cannot do so; nor do we see any reason to do so.

*Bledsoe* is controlling.[13] In so holding, we do not attempt to quantify that portion of the property Susan owned before James died, nor do we cast doubt upon our Supreme Court's recognition that the surviving spouse had something akin to a one-half interest before death.[14] That being the case, Susan did not gain any additional interest as a result of her actions; she merely cannot acquire any of James's interest once she is "found guilty, or guilty but mentally ill, of murder, causing suicide, or voluntary manslaughter, because of the decedent's death."

represents our Supreme Court's careful policy decision in this area. At that time, the court was aware that other jurisdictions had reached differing conclusions. In fact, the Court recognized that at least two other jurisdictions had allowed the murderer to acquire the entire estate. 144 N.E.2d at 713 n. 3a (recognizing *Beddingfield v. Estill & Newman* (1907) 118 Tenn. 39, (10 Cates) 39, 100 S.W. 108, and *Wyckoff v. Clark* (1951) 77 Pa.Dist. & Co.R. 249). To the contrary, a New York case had held that a murderer was a constructive trustee of the whole of the property for the victim's estate, and therefore not entitled to any personal interest. 237 Ind. 130, 144 N.E.2d at 713 n. 5d (recognizing *Van Alstyne v. Tuffy* (1918), 103 Misc. 455, 169 N.Y.S. 173). The fact that our Supreme Court held as it did speaks volumes regarding the share to which each marital partner was entitled during the marriage. A holding that the murderer (or his heirs in *Bledsoe*'s case) could take no portion of the estate would have evidenced approval of the position the Estate argues here, namely that neither spouse had any kind of vested interest or ownership in the property held as tenants by the entirety before death. Our Supreme Court clearly chose not to accept such an interpretation by holding that a one-half division more accurately reflected the shares to which each spouse (or their heirs) was entitled.

**12.** In *Estate of Chiesi v. First Citizens Bank* (1993) Ind., 613 N.E.2d 14, our Supreme Court held that I.C. 29–1–2–12.1 precludes any insurance proceeds from passing to a beneficiary of the policy who has murdered the policy holder. The statute was thereby given an application to a matter of contract rather than inheritance.

**13.** In concluding that *Bledsoe* controls, we disagree with the Estate's contention that our case is distinguishable from *Bledsoe* because the hus-

band who allegedly murdered his wife committed suicide and was never convicted. The practical reality in both situations is some conclusive proof of murder. In *Bledsoe*, it is clear that the Court assumed the husband's guilt despite the lack of a conviction. Here, a final judgment of conviction is the necessary conclusive proof of murder, which by the Estate's own argument reverts to the time of death.

Moreover, our research reveals that the majority of those states which have addressed this issue also agree with the result reached in *Bledsoe*. *See, e.g., Luecke v. Mercantile Bank of Jonesboro* (1985) 286 Ark. 304, 691 S.W.2d 843, later app. 289 Ark. 477, 712 S.W.2d 306; *In re Nunnelley's Estate* (1977) 2d Dist. Fla.App., 343 So.2d 657; *Heuser v. Cohen* (1982) Ky.App., 655 S.W.2d 9; *Pannone v. McLaughlin* (1977) 37 Md.App. 395, 377 A.2d 597; *Sundin v. Klein* (1980) 221 Va. 232, 269 S.E.2d 787, *cert. denied* (1981) 452 U.S. 911, 101 S.Ct. 3043, 69 L.Ed.2d 414. Nearly all others hold that the murderer is entitled to the value of a life estate in an undivided one-half interest. *See, e.g., Matter of Estate of Karas* (1983) 192 N.J.Super. 107, 469 A.2d 99; *Matter of Busacca's Estate* (1980) N.Y.Sur., 102 Misc.2d 567, 423 N.Y.S.2d 622; *In re Nicpon's Estate* (1980) N.Y.Sur., 102 Misc.2d 619, 424 N.Y.S.2d 100; *Preston v. Chabot* (1980) 138 Vt. 170, 412 A.2d 930.

**14.** Indiana courts have long held that it is not the death which is the source of the title, but rather the conveyance to both spouses. *See Lilly v. Smith* (1938) 7th Cir., 96 F.2d 341, *cert. denied*, (1938) 305 U.S. 604, 59 S.Ct. 64, 83 L.Ed. 383; *State of Indiana, Indiana Department of State Revenue, Inheritance Tax Division, supra*, 177 Ind.App. 632, 380 N.E.2d 1279; *Johnson v. Hicks* (1952) 231 Ind. 353, 108 N.E.2d 129.

*See* I.C. 29–1–2–12.1. Accordingly, to hold that the entire estate be held in constructive trust pending a later determination of guilt would require Susan to forfeit the one-half of the property to which *Bledsoe* has established she was legally entitled upon James's death. Such a holding would clearly violate Article 1, Section 30 of the Indiana Constitution.[15]

The trial court properly concluded that Susan, or her successor in interest, owned one-half of the tenancy by the entirety real estate, and that she does not forfeit her share should her guilt be established. The trial court also properly concluded that the remaining one-half interest in the real property was to be held by the Estate in a constructive trust pending further court order.

We affirm the trial court's amended judgment in all respects, and remand for further proceedings consistent with this opinion pending the final disposition of the criminal proceedings. We deny Susan's request for appellate attorney fees.

KIRSCH and BARTEAU, JJ., concur.

---

**15.** Article 1, Section 30 of Indiana's constitution prohibits forfeiture of property a person owns because of his or her criminal conviction. It states that, "No conviction shall work corruption of blood, or forfeiture of estate."