# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 25 2020, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy R. Stoesz
Stoesz & Stoesz
Westfield, Indiana

ATTORNEYS FOR APPELLEE

Jonathan E. Lamb
John A. Cremer
Cremer & Cremer
Fishers, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Supervised Estate of Donald L. Moster, Sr. Deceased,

Lisa Voltz, Successor Personal Representative, and Donald L. Moster, Jr.,

*Appellant-Respondent,*

v.

Rose M. Deschand,

*Appellee-Petitioner.*

September 25, 2020

Court of Appeals Case No. 20A-ES-938

Appeal from the Hamilton Superior Court

The Honorable Michael A. Casati, Judge

Trial Court Cause No. 29D01-1703-ES-110

**Kirsch, Judge.**

In this interlocutory appeal, Lisa Voltz, Successor Personal Representative of the Supervised Estate of Donald L. Moster, Sr., and Donald L. Moster, Jr. (together, "Voltz") appeal the trial court's order denying her motion to void the marriage between Donald L. Moster, Sr. ("Donald") and Rose M. Deschand ("Rose"). This case involves the proceedings originally filed by Rose, as Donald's wife, to be appointed personal representative in order to proceed with the supervised administration of Donald's estate after Donald's death. Voltz was subsequently appointed as Successor Personal Representative of Donald's estate and filed a motion to void the marriage between Donald and Rose, which the trial court denied. Voltz raises the following restated issue for our review: whether the trial court erred when it denied her motion to void the marriage between Donald and Rose and found that there was insufficient evidence that Donald lacked physical and mental capacity in order to consent to the marriage.[1]

We affirm.

## Facts and Procedural History

This appeal arises from an order pertaining to the administration of the estate of Donald. The subject of this appeal and the administration of the estate are

---

[1] Rose raised issues on cross-appeal in her Appellee's Brief. However, Voltz filed a motion to dismiss the cross-appeal, asserting that Rose was attempting to appeal certain interlocutory orders issued by the trial court that were not certified for interlocutory appeal, were not directly related to the same subject-matter as the present appeal, and were never accepted by this court for interlocutory review. *See* App. R. 14(B)(2). We note that in a previously issued order, our motions panel granted Voltz's motion and dismissed Rose's cross-appeal without prejudice. We, therefore, do not reach the cross-appeal issues.

closely intertwined with two other cases involving the same or similar parties, guardianship proceedings with the cause number 29D03-1211-GU-172 ("Cause GU-172") and proceedings initiated by Rose to determine the assets subject to spousal inheritance with the cause number 29D01-1704-PL-3907 ("Cause PL-3907"). We will refer to the facts and proceedings underlying both Cause GU-172 and Cause PL-3907 when necessary.[2]

[4]     On November 30, 2012, Voltz, one of Donald's daughters, filed a Verified Emergency Petition for Emergency Guardianship over Donald ("the Guardianship Petition") under Cause GU-172. *Appellee's App. Vol. II* at 19-23. The Guardianship Petition stated that the "nature of the incapacity of the Protected Person, Donald Moster, is that he is physically and mentally disabled and unable to provide for his care. Specifically, the Protected Person has been diagnosed with Parkinson's Disease [and] is displaying dementia and memory loss." *Id*. at 19. The Guardianship Petition listed Donald's residence as being in Noblesville, Indiana and stated that he had "recently left Indiana and has been in Bourbonnias, Illinois . . . for two weeks." *Id*. The Guardianship Petition further alleged, "It is necessary that a Guardian be appointed for Donald Moster, in order to provide for his care, custody and support and maintenance, due to his mental and physical infirmity." *Id*. at 20. The Guardianship Petition also sought an emergency petition without a hearing and

---

[2] We note that the trial court, in the order appealed here, took judicial notice of the record of the proceedings in both Cause GU-172 and Cause PL-3907. *Appellant's App. Vol. II* at 2.

notice to Donald, alleging that the "requirements of Trial Rule 65 are not necessary in this case because there will be immediate and irreparable injury to the protected person because he is not receiving adequate medical care, does not have his anti-psychotic medication and is not receiving his insulin as needed." *Id*. at 21. Attached to the Guardianship Petition was a physician's report signed by Dr. Mark P. Schopper, dated November 16, 2012. *Id*. at 24-27. The physician's report stated that Donald "is incapacitated by his Psychosis. He needs treatment & guidance." *Id*. at 27.[3]

[5] On November 30, 2012, the same date the Guardianship Petition was filed by Voltz, Hamilton Superior Court 3 issued an order appointing Voltz as an emergency guardian over Donald and his estate. *Id*. at 29-30. The order found Donald was "in need of a Guardian by reason of his disabilities, that he is mentally and physically unable to give his consent, and that it is in the best interests of Donald . . . that a Guardian be appointed, on an emergency basis, to provide care and supervision of Donald . . . and his property." *Id*. at 29. The order further found that Donald was "incapacitated as defined by law and that [Voltz] is a suitable person to serve as Guardian." *Id*. Voltz was appointed to be Donald's guardian with no limitations of powers and responsibilities. *Id*. at 29-30.

---

[3] The physician's report was handwritten, thus making it very difficult to read. *Id.* at 24-27. Additionally, based on what could be gleaned from the physician's report, the report appeared to be based on reports by Voltz and that it was not conducted with a sign language interpreter, although it was noted that Donald was deaf. *Id.*

[6] On January 10, 2013, Donald filed a motion to terminate temporary guardianship. *Id*. at 34-36. Attached to the motion to terminate guardianship was a report from an Illinois physician, Dr. Gary Kaufman, dated December 5, 2012, which concluded that, "At this time[,] however, I believe the patient is competent to understand the decisions he makes and the consequences thereof." *Id*. at 37-38. The report also stated that the examination was conducted in American Sign Language, that the doctor was competent with American Sign Language, and that there was also a certified deaf interpreter who assisted in the examination. *Id*. at 37.

[7] A hearing for the motion to terminate guardianship was held on February 5, 2013, and the "parties appeared in person and by counsel." *Id*. at 49. On February 6, 2013, the trial court in Cause GU-172 issued an order affirming "its order appointing temporary guardian" but ordered that Voltz could not dispose of any real estate. *Id*. On February 12, 2013, Voltz filed for a final hearing on her petition for guardianship over Donald, requesting "a hearing be scheduled in this matter for the purpose of determining whether permanent guardianship is necessary," and a hearing was initially set for March 15, 2013. *Id*. at 50-53, 55.

[8] On March 2, 2013, Donald married Rose in Illinois, where they were living. *Appellee's App. Vol. III* at 127. On March 4, 2013, Donald filed a "Motion for Order Clarifying Term of Appointment of Temporary Guardian," stating that "[p]ursuant to [Indiana Code section] 29-3-3-4(a)(4), said order was to have been for a 'specified period not to exceed ninety (90) days'" and that "[n]inety

days from the date of the Order was February 28, 2013, at which time, by operation of law, the temporary guardianship terminated." *Appellee's App. Vol. II* at 57-58. On the same date, Donald also filed a petition to appoint a guardian ad litem "to independently investigate the facts giving rise to the filing of the petition for the appointment of a guardian." *Id*. at 59. On March 5, 2013, the guardianship trial court appointed a guardian ad litem to perform such an independent investigation. *Id*. at 61.

[9]     On March 6, 2013, Donald was examined by Dr. Mir Yadullahi, with the assistance of a sign language interpreter, and a report from that examination stated, "patient's Mini-Mental Status examination score was 29/30, ruling out any significant cognitive problems." *Id*. at 83-84. On March 20, 2013, Donald filed a "Motion to Compel Delivery of Property and Petition for Contempt and for Sanctions," stating that two days before filing the Guardianship Petition, Voltz closed two bank accounts containing assets belonging to Donald and had two cashier's checks issued in her own name, totaling $235,610.31." *Id*. at 67-71. The report by Dr. Yadullahi was attached to this motion, as was a mental health examination of Donald conducted by Dr. Elizabeth Mirkin on December 31, 2012, which concluded that he "did not exhibit any signs of significant cognitive impairment and appear[ed] to be able to make decisions regarding his care and affairs." *Id*. at 85-86, 88-91. After a hearing on the motion, Voltz was ordered to return the money that she had removed from Donald's accounts. *Id*. at 97.

[10] On May 10, 2013, an entry was made in Cause GU-172, noting that the temporary guardianship had expired and stating that Voltz shall file her final report and accounting within thirty days. *Id*. at 102. On June 11, 2013, Voltz filed her final accounting, and on August 20, 2013, the parties filed a stipulation of dismissal, reporting to the guardianship trial court that they had reached a mediated settlement agreement on August 6, 2013. *Id*. at 98-101, 103-04. The mediated settlement agreement, which was signed by each of Donald's children, acknowledged that Donald was married to Rose and required that all of Donald's real and personal property be placed into a revocable trust with the corpus of the trust to be maintained and managed by the trustee for the benefit of Donald during his lifetime, and upon his death, the corpus of the trust to pass to Donald's children in accordance with Donald's will. *Appellant's App. Vol. III* at 136-38. Cause GU-172 was dismissed on August 22, 2013, without the appointment of a permanent guardian, and the mediated settlement agreement was not filed with the court in Cause GU-172. *Appellant's App. Vol. II* at 105.

[11] Donald remained married to Rose up until his death on July 29, 2016. *Id*. at 133, 139. On March 20, 2017, Rose initiated the underlying proceedings in this case, cause number 29D01-1703-ES-110 ("Cause ES-110"), and petitioned to be appointed personal representative of Donald's estate. *Id*. at 118-20. On March 23, 2017, the trial court issued an order appointing Rose as personal representative and ordering supervised administration of Donald's estate. *Id*. at 121. On September 7, 2017, Voltz filed her petition to probate Donald's Last Will and Testament and to be appointed personal representative in Cause ES-

110, and on October 5, 2017, the trial court granted Voltz's petition and appointed Voltz as successor personal representative of Donald's estate. *Id*. at 133, 139-44. In her petition, Voltz identified Rose as Donald's wife. *Id*. at 139-40.

[12] On April 24, 2017, Rose had also initiated proceedings against Donald's children under Cause PL-3907 by filing a "Complaint to Determine Assets Subject to Elective Right under [Indiana Code section] 29-1-3-1 and for Declaratory Relief Pursuant to [Indiana Code section] 34-14-1-4," through which she sought to determine her right to assets in Donald's estate in light of the trusts, which she did not know existed until after Donald's death; an amended complaint of the same name was filed on November 28, 2017. *Id*. 175-81, 213-20. On March 1, 2019, Rose filed for summary judgment in Cause PL-3907. *Id*. at 243-45. On June 12, 2019, Donald's children filed their motion for summary judgment under Cause PL-3907, seeking, in part, to void the marriage between Rose and Donald. *Appellant's App. Vol. III* at 96-107. The trial court in Cause PL-3907 denied both motions for summary judgment. *Appellant's App. Vol. IV* at 100-01.

[13] On December 26, 2019, under Cause ES-110, Voltz filed a motion to void the marriage of Rose and Donald. *Appellant's App. Vol. II* at 150-51. The trial court held a hearing on Voltz's motion on February 26, 2020, and on March 6, 2020, issued its order denying the motion to void the marriage. *Id*. at 157-59. Voltz filed a motion for leave to file an interlocutory appeal, which the trial court granted. *Id*. at 116. Voltz now appeals.

# Discussion and Decision

[14] Voltz appeals from a negative judgment. A judgment entered against a party who bore the burden of proof at the trial court is a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id*. When determining whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id*. A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Id*.

[15] Voltz argues that the trial court erred in denying her motion to void the marriage between Rose and Donald. She specifically contends that the marriage is void because a valid marriage requires consent, and Donald was unable to consent to the marriage because he had been deemed to be incapacitated when the temporary guardianship was granted and there was no intervening event to show that his status had changed before the date of the alleged marriage on March 2, 2013. Voltz maintains that the trial court in Cause GU-172 found Donald to be incapacitated on November 30, 2012 when the temporary guardianship was granted and reaffirmed that finding on February 5, 2013 when it denied Donald's motion to terminate the guardianship and that there was no further event that changed the court's determination. Voltz further asserts that there was no evidence in the record to show that the orders finding Donald to be "incapacitated as defined by law"

were incorrect and that there is no Indiana law to support that the finding that Donald was "incapacitated as defined by law" would either be vacated by the court or would expire by law under Indiana Code section 29-3-3-4. *Appellee's App. Vol. II* at 29.

[16] Marriage is a civil contract, the validity of which may be challenged in court. *In re Estate of Holt*, 870 N.E.2d 511, 514 (Ind. Ct. App. 2007), *trans. denied*. Indiana Code section 31-11-8-4 provides: "A marriage is void if either party to the marriage was mentally incompetent when the marriage was solemnized." Accordingly, if a party is of unsound mind when the ceremony was performed, the marriage can be declared void. *In re Estate of Holt*, 870 N.E.2d at 514 (citing *Baglan v. Baglan,* 102 Ind. App. 576, 4 N.E.2d 53, 55 (1936)). The burden rests upon the challenger to prove that a party was incapable of understanding the nature of the marriage contract. *Id.* "'The presumption in favor of the validity of a marriage consummated according to the forms of law is one of the strongest known.'" *Id*. (quoting *Bruns v. Cope,* 182 Ind. 289, 105 N.E. 471, 473 (1914), *overruled in part on other grounds by Nat'l City Bank of Evansville v. Bledsoe,* 237 Ind. 130, 144 N.E.2d 710 (1957)).

[17] Here, the issue is whether Donald was incapacitated and therefore unable to give consent at the time of the marriage due to the temporary guardianship that had been granted in Cause GU-172. Under Indiana Code section 29-3-3-4:

> (a) If:

(1) a guardian has not been appointed for an incapacitated person or minor;

(2) an emergency exists;

(3) the welfare of the incapacitated person or minor requires immediate action; and

(4) no other person appears to have authority to act in the circumstances;

the court, on petition by any person or on its own motion, may appoint a temporary guardian for the incapacitated person or minor for a specified period not to exceed ninety (90) days.

Ind. Code § 29-3-3-4(a).[4]  On November 30, 2012, Voltz filed the Guardianship Petition, and the trial court issued an order appointing Voltz as an emergency guardian over Donald and his estate and finding Donald was "in need of a Guardian by reason of his disabilities, that he is mentally and physically unable to give his consent, and that it is in the best interests of Donald . . . that a Guardian be appointed, on an emergency basis, to provide care and supervision of Donald . . . and his property." *Appellee's App. Vol. II* at 29-30.  The order further found that Donald was "incapacitated as defined by law and that [Voltz] is a suitable person to serve as Guardian." *Id*.  This temporary guardianship

---

[4] On July 1, 2018, Indiana Code section 29-3-3-4 was amended to allow courts the ability to grant one ninety-day extension for temporary guardianships, but only upon notice, hearing, and a showing of good cause.  At all times relevant to the present case, however, there was no legislative authority to extend the duration of the temporary guardianship beyond the original ninety days.

was done ex parte and without a hearing or notice to Donald because the Guardianship Petition alleged that the "requirements of Trial Rule 65 are not necessary in this case because there will be immediate and irreparable injury to the protected person because he is not receiving adequate medical care, does not have his anti-psychotic medication and is not receiving his insulin as needed."[5] *Id*. at 21.

[18] Under Indiana Code section 29-3-3-4, the temporary guardianship over Donald expired after ninety days as a matter of law. Therefore, the temporary guardianship expired on March 1, 2013. Although the trial court in Cause GU-172 issued an order on February 5, 2013, in which it affirmed the initial order appointing the temporary guardianship, at no point in the proceedings under Cause GU-172 was there a motion to extend or renew the temporary guardianship and the accompanying finding of incapacity or an order extending or renewing the same. Further, although Voltz filed for a final hearing on her petition for guardianship over Donald on February 12, 2013, requesting "a hearing be scheduled in this matter for the purpose of determining whether permanent guardianship is necessary," no hearing was ever held, and a permanent guardianship was never ordered; further, neither of these actions was accomplished before the expiration of the ninety-day temporary

---

[5] Indiana Code section 29-3-3-4 provides, "No such appointment shall be made except after notice and hearing unless it is alleged and found by the court that immediate and irreparable injury to the person or injury, loss, or damage to the property of the alleged incapacitated person or minor may result before the alleged incapacitated person or minor can be heard in response to the petition."

guardianship. *Id*. at 50-53, 55. Therefore, the temporary guardianship expired on March 1, 2013 as did the finding of incapacity.

[19] The expiration is especially true given the ex parte nature of the original proceeding regarding the temporary guardianship. Because Voltz alleged that the "requirements of Trial Rule 65 [were] not necessary in this case because there will be immediate and irreparable injury to the protected person because he [was] not receiving adequate medical care, [did] not have his anti-psychotic medication and [was] not receiving his insulin as needed," *id*. at 21, there was no hearing before the temporary guardianship was ordered, nor was Donald given any notice until the order was issued. Therefore, the finding of incapacity and granting of the temporary guardianship were based exclusively on Voltz's allegations in the Guardianship Petition and the attached physician's report, which was done without a sign language interpreter and relied heavily upon statements made by Voltz. *Id*. at 24-27. The trial court's original ex parte finding of incapacity was tied to the temporary guardianship and, therefore, was also limited to the same ninety-day duration.

[20] Additionally, Donald was not required to take any affirmative steps to rescind the findings of incapacity in the order of temporary guardianship. The Indiana Code contemplates that a "protected person" "may petition for an order that the protected person is no longer an incapacitated person and for termination of the guardianship or protective order." Ind. Code § 29-3-12-3. However, after the ninety days expired, on March 1, 2013, Donald was no longer a protected

person as defined by Indiana Code section 29-3-1-13.[6]  Likewise, he was no longer under guardianship on that date and had never been under a protective order.  Indiana's guardianship statutes do not contain any procedure for an individual, who is no longer a protected person, to petition to overturn a prior ex parte finding of incapacity contained in an expired temporary guardianship order.  The prior finding cannot continue in perpetuity without a procedure to rescind it, and therefore, like the expired temporary guardianship, it can no longer be binding.  There is no authority for Voltz's argument that the finding of incapacity in the ex parte order granting of temporary guardianship continues in perpetuity.

[21]   Accordingly, the trial court found that there was insufficient evidence of a lack of physical and mental capacity of Donald as of March 2, 2013 to void his marriage to Rose.  This finding is bolstered by the fact that no one pursued any legal proceeding to void the marriage prior to Donald's death.  Further, evidence presented during the proceedings in Cause GU-172, including a psychiatric evaluation of Donald conducted on December 31, 2012, and a neurological examination conducted on March 6, 2013, contained no finding or opinion that Donald was either physically or mentally incapacitated, and these examinations also contained statements by Donald that contradicted some allegations in the Guardianship Petition that was filed by Voltz.  Therefore, the

---

[6] A protected person is defined as "an individual for whom a guardian has been appointed or with respect to whom a protective order has been issued."  Ind. Code § 29-3-1-13.

trial court did not err when it denied Voltz's motion to void the marriage between Rose and Donald in Cause ES-110.

[22] Affirmed.

Pyle, J., and Tavitas, J., concur.